**James Milton WADDY and James Barrow
Ransom, Petitioners-Appellants,**

v.

**Henry HEER, Warden, Tennessee State
Penitentiary, Respondent-Appellee.**

**No. 16919.**

United States Court of Appeals
Sixth Circuit.

Oct. 10, 1967.

Karl P. Warden (Court Appointed), Nashville, Tenn., for appellants.

Ed R. Davies, Nashville Tenn., for appellee, Henry C. Foutch, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., on brief, George F. McCanless, Atty. Gen., State of Tennessee, Nashville, Tenn., of counsel.

Before WEICK, Chief Judge, and PHILLIPS and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a judgment of the District Court denying and dismissing petitions for writs of habeas corpus. Petitioners contend that their pleas of guilty in the criminal court of the Tenth Judicial Circuit at Nashville, Tennessee, were improperly induced by physical coercion by the police and by the promise of the trial judge that he would give them specific less-than-maximum sentences. They also contend that their pleas may not stand because their voluntariness was not determined by judicial inquiry in open court before acceptance. They further attack their pleas because

they were denied access to counsel by the police during the interval between their arrest and arraignment and because they were without counsel at the preliminary hearing where they first offered pleas of guilty. Finally, they contend that the designation of their race as Negro on each indictment returned against them vitiated the proceedings.

The facts are as follows. A white Nashville police officer had been shot on March 23, 1960 and petitioner Waddy was advised by his aunt that police officers were looking for him. He went to police headquarters where he surrendered. He was taken into an interrogation room where he contends he was not advised of his rights, was refused permission to call his aunt or an attorney and was beaten by police officers until he confessed orally not only to the shooting but also to several unrelated burglaries and armed robberies. He subsequently signed a formal confession to the offense of assault with intent to commit murder in the first degree and to the other crimes.

Petitioner Ransom was arrested on the same morning with three other persons who were also charged with shooting the officer. Ransom contends that he and the other persons arrested with him were also beaten until they confessed orally and subsequently signed formal confessions which had been prepared for them.

The next morning, both appellants, still without counsel, were taken to a preliminary hearing where each entered a guilty plea to the charge of assault with intent to commit murder in the first degree and to the several burglaries and robberies. The proceedings at the preliminary hearing, including the pleas, were not introduced or referred to at the hearing when sentence was determined.

Appellants and the other three persons were remanded to jail and on March 28 and 29, were indicted by the grand jury which accused them of three charges of third degree burglary, five charges of armed robbery, two charges of third degree burglary and attempted larceny (one not involving appellant Waddy), and as-sault with intent to commit murder in the first degree.

In the interval between the preliminary hearing and indictment, appellants retained counsel to represent them at the trial. According to petitioner Waddy, counsel advised them that because of their signed statements and guilty pleas at the preliminary hearing, they "had forfeited all our rights for a trial because [of] the fact that those confessions would be presented against us at our trial." Counsel's testimony confirmed this:

Of course, I explained to them that an officer was shot and I says, and I told them this, I told them more, if they are all mad at us, and if we don't go along with it, they are going to get us in most of them anyway with these confessions and everyone of them will be consecutive.

On May 18, the day set for trial, defense counsel discussed the cases with the prosecuting attorney in an attempt to negotiate favorable consequences to a plea of guilty. Following this discussion, the trial judge took the defendants and defense counsel into a room and, according to defense counsel, a sentence of from 23 to 41 years was discussed. Appellants deny having heard any mention of 41 years. On this point, appellant Waddy testified:

Defense counsel told them * * * so he had talked to the judge, Judge Weimar, prosecuting attorney Howard Butler, and they had agreed if we would enter a plea of guilty that we would receive a maximum sentence of 23 years and maximum no more * *. And he said due to circumstances surrounding that we had signed this confession, that it was white person that we committed the crimes upon, that prejudices that was in the court, that he felt he didn't advise us and I don't think any other lawyer would advise us to fight it in other words * * *

Q. Did you agree to accept guilty pleas?

A. We agreed to accept the 23 years on our attorney's advice.

Defense counsel testified on the question of appellant's understanding of the proposed disposition, "So, they asked me some questions about it, and I tried to make them understand it. I understood it but I couldn't be sure, absolutely sure, sir, that all of them understood it. Certainly some of them did."

On the issue of Judge Weimar's participation, defense counsel testified,

He took us in a room. He has got a scale that shows what you will serve. What it amounts to. Time off for good behavior. I don't remember what it was and the judge didn't either. I don't suppose but anyway he had a scale. He told them that I can't remember exactly the number. How, the sentences were 23 to 41 years, I know that because I have refreshed my memory but he told them what it would be. And I understood that perfectly.

Following the discussion in the judge's office, the cases were called in court and the judge read the indictment and defense counsel entered a plea of guilty for the defendants. No examination to determine the voluntariness of the plea was conducted by the trial judge. Defense counsel testified on this point:

Q. Do you remember [sic] would be any questioning back and forth in open court between the judge.

\* \* \* \* \* \*

A. (interposing) That is done now but it wasn't done \* \* \* now General Butler can correct me \* \* \* I don't think that was over done. Now they will stop each one and say is that your plea? Is that your plea? Is that your plea, all that. I don't think that was done.

Under Tennessee practice, any recommendation by the prosecutor, if accepted by the court, is submitted to the jury which then fixes sentence. Accordingly, a minimum of proof was presented to the jury which then returned sentences as recommended by the prosecutor. At the evidentiary hearing, the only testimony on what occurred at this point was that of appellant Waddy who testified as follows:

Q. Didn't the foreman of the jury stand up and tell you what you had received?

A. No, sir—

Q. Didn't he pronounce sentence to the court?

A. No, sir, the jury just raised their hands in some manner okayed it. The point I raised in my petition is, that we didn't know how much time we had. Our lawyer told us that no matter what it said, you only have 23 years.

Q. James, let me ask you this, are you saying that the minutes of the state court are in error in any way.

A. Yes, sir, I am contending that our time was not fixed in the Correction Department because that is the only place I heard the 23 to 41 years. That is the point I am trying to get over because prior to that we were never informed.

No stenographic minutes of these proceedings wre introduced at the evidentiary hearing.

The District Judge characterized the participation of the trial judge in this language.

THE COURT: Well, of course, the testimony here which I thought was fantastic until Mr. Rutherford confirmed it, testimony of the petitioner that Judge Weimar told them the sentence.

Nevertheless, in his order denying the petition for habeas corpus, he found that petitioners failed to carry the burden of showing that the pleas of guilty entered upon the advice and recommendations of their privately retained counsel were involuntary or entered unknowingly and without an understanding of their rights. He did not make specific findings or conclusions of law concerning petitioners' other contentions.

■ Despite the vividness of petitioners' testimony in support of their

contention of physical coercion, it was uncorroborated and there was testimony of other witnesses which refuted their version. Petitioner Waddy's aunt who visited him in jail the day following his arrest observed no evidence of beating. The assistant city attorney who was present on the day of arrest when the confession was dictated observed no evidence of violence and heard no complaints of physical abuse from either petitioner. An attorney who was employed by Ransom's family visited him in jail after the preliminary hearing and observed that his client had a skinned ankle where he said an officer kicked him. Although he recalls complaints of a black eye, he has no recollection of having seen it. He had photographs taken of Ransom and turned them over to the defense counsel who later negotiated the pleas. Defense counsel who received these photographs testified about the claimed beating,

> I had no proof of it, no sir, except their word. But they did tell me at the time that, of course, that was common practice in those days. It wasn't unusual for prisoners to be beaten in those days.

The court found that petitioners failed to sustain their burden on this point. A petitioner in a habeas corpus proceeding must prove his allegations by a preponderance of the evidence. Fiedler v. Shuttleworth, 153 F.2d 999 (6th Cir. 1946); Gray v. Johnson, 354 F.2d 986 (6th Cir. 1965). Findings of fact of the District Court will not be set aside on appeal unless clearly erroneous. Rule 52(a) F.R. Civ.P., Gray v. Johnson, supra, and we hold that the determination on this issue should not be disturbed because it is supported by competent evidence.

■■ Since Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) has prospective effect only, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the absence of counsel at the time the uncoerced confessions were obtained does not afford grounds for reversal. We also hold that the absence of counsel at the preliminary hearing deprived petitioners of no constitutional right because such a hearing is not a critical part of a criminal proceeding under Tennessee law. Kimbro v. Heer, 364 F.2d 116, (6th Cir. 1966), vacated on other grounds, 386 U.S. 128, 87 S.Ct. 902, 17 L.Ed.2d 778. This case can be distinguished from White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), in which the Supreme Court held a Maryland preliminary hearing to be a critical stage, because the guilty plea in *White* was introduced into evidence. 373 U.S. at 60, 83 S.Ct. 1050.

■ Further, we find that the racial designation, per se, does not vitiate the proceedings. Petitioners have shown no prejudice to have resulted to them from such practice, which we deplore and which we are assured by the representative of the State of Tennessee has been discontinued.

■ Appellants' contention that the plea was entered upon a bargain between them and the judge is not supported by the evidence. The facts establish clearly that the bargain was made between defense counsel and the prosecutor before the judge became involved and that the judge was only asked if he would recommend the agreed upon disposition to the jury which alone had the power to fix sentence and if he would order the sentence so fixed to produce the bargained-for result. In this respect, this case is distinguishable from United States v. Tateo, 214 F.Supp. 560, (S.D. N.Y.1963), Rogers v. State, 243 Miss. 219, 136 So.2d 331 (1962), McClure v. Boles, 233 F.Supp. 928 (N.D.W.Va. 1964), Mesmer v. Raines, 351 P.2d 1018, (Okl.Cr.App.1960), Commonwealth v. Senauskas, 326 Pa. 69, 191 A. 167 (1939) and United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966), cited by appellants, where the promise of a lesser penalty by a judge as an inducement for a plea of guilty is properly condemned.

There remains the contention that appellants' constitutional rights were violated by the failure of the trial judge to ascertain the voluntariness of the pleas before accepting them. The requirement

that guilty pleas be made knowingly and voluntarily has been emphasized by the Supreme Court:

> A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequence. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1926).

In order to insure that involuntary and unknowing pleas will not be accepted in the Federal Courts, Rule 11[1] of the Federal Rules of Criminal Procedure establishes a specific procedure to be followed by trial judges.

The procedural codes of many states[2] impose similar duties on trial judges and the tentative draft of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, recommends that a court, before accepting a guilty plea, should advise the defendant of his rights and the consequences of his plea and determine its voluntariness.

Heiden v. United States, 353 F.2d 53 (9th Cir. 1965), the only case which construes Federal Rule 11 to be mandatory and to require vacation of the judgment of conviction for non-compliance therewith even though the plea was subsequently found to have been made voluntarily and knowingly, did not hold that the constitutional guarantee of due process compelled that result.

The court in *Heiden* stressed that the prescribed practice permitted the fact of the understanding of the defendant to appear of record and to demonstrate, beyond dispute, his relevant state of mind at the time of the plea. When the ascertainment is subsequently made, greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided and the defendant is then encumbered with the burden of proving that his plea was not voluntarily and intelligently made.

Despite this persuasive rationale, no other circuit has followed *Heiden* in construing the effect of non-compliance with Rule 11 when no actual prejudice is shown. See Brokaw v. United States, 368 F.2d 508 (4th Cir. 1966); Townes v. United States, 371 F.2d 930, 933 (4th Cir. 1966); Domenica v. United States, 292 F.2d 483 (1 Cir. 1961); Hobbs v. United States, 340 F.2d 848 (7th Cir. 1965).

■ The contention that the 14th Amendment requires a state court to follow a procedure similar to that prescribed by Rule 11 was considered and rejected in United States ex rel. Smith v. Hendrick, 260 F.Supp. 235 (E.D.Pa. 1966) where on habeas corpus the district court determined, as here, that the petitioner's plea had been made voluntarily, with knowledge of the charges and the consequences and with the advice and assistance of counsel.[3]

---

1. Rule 11. Pleas. A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

2. See e. g., Ill.Rev.Stat. Ch. 38 § 113–4(c); Ky.R.Crim.P., Rule 8.08.

3. In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) where a prescribed procedure was found to be constitutionally required, the accused defendants were without counsel at the relevant time.

We, too, decline to hold that due process requires compliance with a particular procedure when a plea is accepted from a defendant represented by counsel although the preferred practice would permit the comprehension of the accused to appear on the record at the time the plea is entered.

We express our appreciation to Karl P. Warden, Esq. of Vanderbilt University School of Law for his excellent representation of petitioners as court-appointed counsel.

Affirmed.