**Ernest COX, Petitioner-Appellee,**

v.

**Harold J. CARDWELL, Warden, Respondent-Appellant.**

**No. 71-1939.**

United States Court of Appeals, Sixth Circuit.

June 15, 1972.

Celebrezze, Circuit Judge, concurred in result and filed opinion.

Leo J. Conway, Asst. Atty. Gen., William J. Brown, Atty. Gen. of Ohio, Co-

---

lumbus, Ohio, on brief for respondent-appellant.

Rankin M. Gibson (Court apptd.), Lucas, Prendergast, Albright, Gibson, Brown & Newman, Columbus, Ohio, for petitioner-appellee.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

We consider the appeal of Harold J. Cardwell, Warden of the Ohio State Penitentiary, from an order of the United States District Court for the Southern District of Ohio, directing that appellee Cox be given a new trial in the Court of Common Pleas of Greene County, Ohio. There, on March 1, 1966, a jury had convicted him of armed robbery.

■ The prosecution evidence at trial was that at 8:30 in the evening of November 10, 1965, a small store located in Beaver Creek Township, Ohio, was held up by two men. The clerk on duty at the time identified appellee Ernest Cox and the latter's nephew, Thomas Keelor, as the robbers. This witness said that Cox brandished a pistol in prosecuting the robbery and that the robbers, with their loot, left the scene in a blue station wagon. There was evidence from which a jury could find that the "get away" car was a blue Rambler station wagon, similar to one possessed by Cox at the time of the robbery. A pistol identified by the clerk as simlar to the one used by Cox was discovered under the mattress on a bed at the time and place of Cox's arrest—a room in the Mountain Top Inn, an establishment in Crossville, Tennessee. There was other evidence supporting the prosecution, such as the discovery in a room occupied by Cox in Dayton, Ohio, of a bag of similar make and size as the one into which the clerk, at the robbers' command, had emptied the contents of the cash register. Cox and his nephew, Keelor, were arrested two days after the robbery. Keelor pleaded guilty. There is no claim that the probative worth of the clerk's identification of Cox and Keelor was in any degree impaired by an element of suggestion by the police. Cox's belated recital that he was not one of the robbers—*made for the first time at the evidentiary hearing in the United States District Court*—did not detract from the accusing clerk's credibility. Except for Cox's claim that he had an alibi, and was denied an opportunity to prove it, there is nothing to suggest any inadequacy or lack of cogency in the prosecution's case.

■■ Following an evidentiary hearing, the District Judge ruled that the Common Pleas Judge who presided at Cox's trial, offended the United States Constitution by his rulings relative to petitioner's attempt to assert a defense of alibi. He held also that failure of petitioner's counsel to have given timely notice of such a claimed alibi defense denied petitioner the effective assistance of counsel.

We reverse.

It is our opinion that there is no merit in Cox's claims and also we hold that his petition should have been dismissed for failure to exhaust state court remedies still available to him.

If we take the easy road and merely hold that dismissal should have been granted for appellee's failure to exhaust available state remedies, we will only add to the ever-increasing burdens put upon state and federal courts by the litigating and relitigating of state court convictions. We are satisfied that if this matter is returned to it for Cox's employment of presently unused post-conviction remedies, Ohio will, understandably, deny his claim that it had deprived him of due process. He would then return to the United States District Court for another run over the course in the federal courts. We therefore, initially set out the reasons which prompt us to find that the evidentiary hearing in the District Court failed to disclose merit in appellee's claim for relief.

## 1. *The merits.*

We prefatorily recite the still existing rule that state prisoners carry the burden of establishing their claims of constitutional wrongs when asking federal courts to set aside their convictions. 28 U.S.C. § 2254(a); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, 836 (1941); Allen v. Perini, 424 F.2d 134, 138 (6th Cir. 1970); Jones v. Russell, 396 F.2d 797 (6th Cir. 1968); Waddy v. Heer, 383 F.2d 789, 793 (6th Cir. 1967), cert. denied 392 U.S. 911, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968); Gray v. Johnson, 354 F.2d 986 (6th Cir. 1965).

Our study of the entire record before us leads to our conclusion that not only was Cox *not* denied the opportunity to offer alibi evidence, but that, except for testimony given by his criminal accomplice, he indeed did not have any such evidence. At this trial, Cox's alleged accomplice, who had already pleaded guilty, was allowed to testify to support Cox's claim of alibi.

Crossville, Tennessee, was about a six or seven hour drive from the place in Ohio where the crime was committed. It was the home town and wonted stamping ground of Cox and Keelor. Cox said that he was in Crossville at the time of the robbery and had been seen there by a substantial number of his friends and relatives. None of these, however, could ever be persuaded to make the short trip from Crossville to the place of trial or to the District Court to support Cox's claim that one or more of them had seen him in Crossville at the time of the crime. The only, and total, material that Cox and his counsel have been able to produce after the passage of five years from his conviction consists of two unique affidavits which are attached as appendices hereto. None of his assertions of entitlement to relief in his various post-conviction proceedings in the Ohio Courts was supported by even the meager substance of these novel affidavits. A fair reading of them discloses that they provide no evidence that at the time of the robbery —8:30 in the evening of November 10, 1965—appellee Cox was not in Greene County, Ohio, but in Crossville, Tennessee.

Thomas Keelor, Cox's nephew who had pleaded guilty to the charged crime, was called as a defense witness at appellee's trial and there denied that Cox took part in the holdup. He said that another person, one "Rocky" Keeton, was his accomplice. Keeton, said Keelor, had come into his life just before the robbery and went out of it the next day when "Rocky" Keeton was last seen in Crossville, Tennessee, the place to which Keelor and *whoever was his accomplice* must have driven immediately after the robbery. Keelor said that a blue Rambler station wagon similar to the one possessed by Cox was indeed the "get away" car; but, said Keelor, it was not Cox's blue Rambler station wagon. It belonged to "Rocky" Keeton. This station wagon, as well as "Rocky" Keeton, disappeared from Crossville on the day after the robbery. Without further recital of his story, we observe that the jury's disbelief of it is understandable. Its integrity is impaired by the testimony of petitioner-appellee Cox, given in the United States District Court's evidentiary hearing. There appellee Cox testified that his nephew, Tom Keelor, did not commit the crime to which he had pleaded guilty. He testified that the nephew not only did not commit the robbery, but was with him, Cox, at the time it occurred.

At the hearing in the District Court, Cox explained the violent collision between his own testimony and his nephew's testimony and plea of guilty by suggesting that the nephew's plea was the product of being offered and accepting a lighter sentence. Except for his naked assertion of it, Cox provided no corroboration of this story. The nephew who had, at appellee's state court trial, testified that he had committed this crime, and attempted to provide an alibi for appellee, was not called as a witness at the District Court evidentiary hearing. The nephew was then out on parole.

Cox did not take the stand at his state court trial. He offers no explanation or excuse for his failure to do so. The attorney who defended him, whose deposition was put in evidence at the District Court hearing, testified that Cox made the decision not to take the stand. While an accused's failure to testify cannot be commented upon at his trial, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), no rule has as yet been announced that a United States District Judge or an appellate court, in testing the validity of a claim of denial of due process, may not give consideration to the unexplained failure of a petitioner to take the stand in his own defense. We make clear, however, that our view in this regard has not been of controlling or integral weight in our resolution of the question before us.

Cox was arraigned in the Court of Common Pleas of Greene County, Ohio, on February 4, 1966. A lawyer, Melvin Stinchfield, was appointed to defend him. At the District Court evidentiary hearing Cox said that Stinchfield recommended a plea of guilty to get a reduced sentence, but that he refused. Cox became dissatisfied with Stinchfield, and on February 17 another attorney, Nicholas A. Carrera, was appointed. He carried on Cox's defense at trial and in some post-conviction proceedings until his motion to withdraw as counsel for Cox was granted.

The District Court finding of constitutional deprivation derives from the following. After his appointment, Attorney Carrera was told by Cox that there were some people in Crossville, Tennessee, who could testify that Cox was in Tennessee at the time the crime was committed in Greene County, Ohio. Carrera's deposition testimony at the evidentiary hearing was that his client said there were alibi witnesses in Tennessee. He was told by Cox to consult with Cox's brother and sister-in-law who would provide the attorney with the needed relevant information. The attorney did consult with Cox's brother and sister-in-law. They, however, were unable to come up with the name of anyone who could, or would, testify in support of a claim of alibi. Mr. Carrera testified that after the trial he had in mind to move for a new trial, supported by affidavits of persons who would state that Cox was in Crossville at the time of the crime. Asked whether he did this, he testified:

"A. Yes, I did. I made contact with his brother and his sister-in-law, Maxine Cox, and I do have some notes left in the file from that. On March 11 of '66 Maxine Cox called the office, and I had previously talked to them about if they could [give] me the names of the witnesses. I would at least prepare affidavits. I felt if the judge saw affidavits from these witnesses, that he would then either let us take their deposition or bring them up, and she called to advise that her husband was going down to Tennessee that weekend and that they would call these witnesses and if available, they would call me back and I would prepare the affidavits, and he would take them down with him.

"Later on that day, Maxine called back and the note I have in my secretary's handwriting—I didn't take the call—was that three witnesses can't say for sure they saw Ernest Cox in Tennessee on any certain day. His sister-in-law called.

"Q. Was in your judgment after receiving that information that the witnesses could not expressly support your client's claim of his whereabouts?

"A. No, I couldn't say that. This said that three witnesses that they thought could absolutely do it couldn't, but I still left the door open that if they did go down and could procure the witnesses at any time, I would prepare the necessary affidavits. I didn't close the door on it, because I still don't, to this day, know what those witnesses could say.

"Q. Subsequent to this particular period, did any witness ever notify

you, or did anyone ever come forward and state to you that they could support your client?

"A. Just the client and Tom Keelor, the one that took the witness stand."

At the date of Carrera's appointment, February 17, 1966, Cox's trial had already been set for February 28. Because of Cox's then claim as to alibi witnesses,[1] Carrera sought a continuance at an informal conference with the Common Pleas Judge whom Carrera said was generally quite generous in such regard. The judge, however, said he would not grant a continuance because of the needs of his docket. Accordingly, on February 26, 1966, Carrera gave notice of intention to offer a defense of alibi. Such notice was one day late under Ohio's statute which requires three days notice of intention to rely on alibi as a defense. Filed with the notice was a motion in which counsel stated "that he has information that at least some of the following people can identify the defendant as being in Crossville, Tennessee, *at or about the time of the alleged robbery*." This was followed by some thirteen names. The motion then went on:

"That said defendant cannot afford the expense of bringing these witnesses to Ohio, nor take their depositions in Tennessee, nor even the expense of investigating as to whether these witnesses would come up on their own expense, which is very doubtful at the onset.

"Wherefore, defendant moves this court for an order requiring *the prosecutor* to look into these witnesses in order that the defendant may have a fair trial, or in the alternative, for this court to attempt to procure the attendance of these witnesses through the Tennessee Courts, the same as the Tennessee Courts could compel witnesses from Ohio under Section 2939.-

26 of the Ohio Revised Code." (Emphasis supplied.)

At the opening of the trial, counsel for defendant renewed the foregoing motion and the Common Pleas Judge held:

"THE COURT: The Court is of the opinion that the Notice of Alibi wasn't seasonably given and the Court will sustain the Motion on the part of the State and the Court will over rule the Motion on the part of the Defendant relative to the purported alibi witnesses and the branches of Motion which indicates that the Defendant cannot afford the expense of bringing these witnesses to Ohio. There is no provision that the Court can grant that under the existing Ohio law, so the Court will over rule the Motion."

We find no fault with the trial judge's ruling.

The two affidavits used at the District Court evidentiary hearing and which we have attached as appendices, were constructed by taping and putting into affidavit form questions put and answers given over the long distance telephone. They fail to support a claim that Cox was in Crossville, Tennessee, at 8:30 in the evening of November 10, 1965. They were received in evidence and considered by the District Judge over the objection of the prosecutor. Such affidavits might be considered to support a holding that an evidentiary hearing should be held, but not as evidence upon such a hearing. We have, however, not relied on such procedural irregularity in arriving at our conclusion. Walker v. Johnston, 312 U.S. 275, 286–287, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Anderson v. Johnson, 371 F.2d 84, 94 (6th Cir. 1966).

Upon the foregoing record, we cannot sustain a finding that Ernest Cox was unconstitutionally dealt with by the State of Ohio. In the context of this

---

1. A search of his testimony at the evidentiary hearing and the entire record of this matter fails to disclose that Cox ever mentioned to his first appointed attorney that he had an alibi defense.

case we would not join in a holding that the Ohio statute requiring three days notice of intention to present an alibi defense, offends the United States Constitution. Such rules are not unusual, and it would add fresh novelty to the law to require that in indigency cases the state prosecutor undertake investigation as to the existence of alibi witnesses and then somehow arrange for their appearance and testimony to support the defense, even though such witnesses are beyond reach of subpoena.

■ If the controlling findings of the District Court are to be considered as findings of fact, we hold that they are erroneous within the meaning of Rule 52(a) Fed.R.Civ.P. We are also of the opinion that if there was any error in the state court proceedings, constitutional or otherwise, it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967).

We should make clear that if appellee Cox had established by substantial or even colorable proof, that he really had some witnesses that he could have offered to support a claim of alibi, but for the neglect of his attorney, we would take a different view of this matter. Further, if Cox had made a substantial or even colorable showing that he really had a supportable alibi defense, the use of which he was denied because of a trial court's abuse of discretion in an over weening enforcement of Ohio's requirement of notice of such defense, we might take a different view. We are satisfied, however, that the record before us does not support either of the above hypotheses.

*2. Exhaustion of remedies.*

■ The petition for habeas corpus relief was filed in the District Court on August 28, 1969. Thereafter, the Attorney General of Ohio filed a motion to dismiss such petition for failure of petitioner to have exhausted state court remedies still available to him, as required by 28 U.S.C. § 2254. This motion disclosed that on April 4, 1969, Cox had filed in the *Court of Common Pleas* of Greene County, Ohio a Petition to Vacate Sentence, as permitted by Section 2953.21 of Ohio Revised Code. Section 2953.21 provides:

"(A) Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, *may file a verified petition at any time in the court which imposed sentence,* stating the grounds for relief relied upon, * * * ." (Emphasis supplied.)

The aforesaid motion to vacate sentence had been filed before, and was still pending in, the Common Pleas Court on August 28, 1969, when the petition for habeas corpus was filed. Thus petitioner *had not exhausted remedies still available to him.* It also appears that prior to employment of the post-conviction remedy provided by Section 2953.21 of the Ohio Code, Cox had, on September 25, 1967, filed a motion for leave to appeal to the Court of Appeals for the Second District. This motion was also pending when the petition for habeas corpus relief was filed in the District Court. Thus there were two remedies still to be processed in the Ohio court when the petition was filed in the District Court. During the continued pendency of the case in the District Court, the Court of Common Pleas of Greene County, Ohio, on December 9, 1969, denied Cox's aforesaid motion made under the right given by Section 2953.21 O.R. C. Following such order, the Second District Court of Appeals on December 29, 1969, dismissed Cox's theretofore pending motion for leave to appeal, saying:

"The Court decrees this case is hereby dismissed for the reason that the Court of Common Pleas has ruled upon the application for post-conviction remedy."

Cox, however, took no appeal from the December 9, 1969, order of the Court of

Common Pleas denying his post-conviction Petition to Vacate Sentence. He then could have, *as a matter of right*, appealed the order of the Court of Common Pleas. Section 2953.23(B) O.R.C. provides:

"(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953 of the Revised Code."

Thus, while still seeking habeas corpus in the United States District Court, he failed to employ a remedy then available to him in Ohio. Even though the time to appeal as of right expired by his failure to exercise it, there still remains to him the opportunity to ask for leave to file a delayed appeal.

The District Judge, relying on our decision in Terrell v. Perini, 414 F.2d 1231 (6th Cir. 1969), denied the Attorney General's motion to dismiss and disposed of the question as follows:

"Respondent argues that petitioner has not exhausted his available state court remedies because he has not presented his constitutional claims to the *state's highest court*." (Emphasis supplied.)

In State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), the Supreme Court of Ohio indicated that its own post-conviction remedy, § 2953.21, would not provide relief if the judgment of conviction had been rendered by "a court having jurisdiction over the person of the defendant and jurisdiction of the subject matter." In Coley v. Alvis, 381 F.2d 870, 872 (6th Cir. 1967), and Allen v. Perini, 424 F.2d 134, 139 (6th Cir. 1970), we held that in view of State v. Perry; Ohio's § 2953.21 was really not an effective post-conviction remedy. Thereafter, however, by State v. Juliano, 24 Ohio St.2d 117, 265 N.E.2d 290 (1970), the Ohio Supreme Court made clear that the issue of ineffectual assistance of counsel presents a constitutional question cognizable under § 2953.21. We recognized this rule in Steed v. Salisbury, 459 F.2d 475 (6th Cir. 1972), decided April 13, 1972. The appellee has not presented this issue to any Ohio appellate court, and he relies on it in this proceeding.

The time has passed for Cox, as a matter of right, to appeal to the Court of Appeals from the Court of Common Pleas denial of his § 2953.21 petition. He continues to have the right to apply for leave to take a delayed appeal therefrom. We have held that such avenue must be exhausted before entering the United States District Court. In Allen v. Perini, 424 F.2d 134 (1970), we said:

"It is re-emphasized that prisoners convicted on a plea of not guilty must exhaust their remedy of delayed appeal under § 2953.05 as well as their remedies under the Ohio post conviction statute, § 2953.21." 424 F.2d at 140.

Appellee has not availed himself of all the procedural steps of collateral attack that can be taken under the Ohio post-conviction statute.

The cause is remanded to the District Court for the entry of an order dismissing appellee's petition for a writ of habeas corpus, on the grounds both that his claims are without merit and that he has not exhausted available state remedies.

APPENDIX A

AFFIDAVIT

STATE OF TENNESSEE,
COUNTY OF CUMBERLAND, ss:

GEORGE COX, Route 1, Crossville, Tennessee, being first duly cautioned and sworn, deposes and says:

Q.: Your name is George Cox, is that right?

A.: That's right.

Q.: And what is your address, sir?

A.: Crossville, Tennessee, Route 1.

Q.: Route 1. Do you know Ernest Cox?

A.: Yes, sir.

Q.: And how long have you known him?

A.: Oh, all of his life.

Q.: All of his life? Are you related to him?

A.: Yes.

Q.: What is your relationship?

A.: He is my half-brother's boy.

Q.: He's your half-brother's boy? Do you know whether or not he was in Crossville, Tennessee on November 10 of 1965? That would be the day before Armistice day?

A.: Well, I wouldn't say on that day, on that date, I couldn't recall, but he was here a day or two before he was arrested.

Q.: He was here a day or two before he was arrested?

A.: (Affirmative)

Q.: And where was he arrested, do you know?

A.: I believe up at this Mountain Top Grill, or someplace.

Q.: Mountain Top Grill?

A.: Yes.

Q.: I see. Did you see him personally?

A.: Yes, I saw him personally.

Q.: Two or three days, a day or two before that, is that right?

A.: A day or two before he was arrested, yes.

Q.: I see.

A.: I saw him and talked with him.

Q.: I see. Who runs the Mountain Top Inn, do you know who owns that?

A.: Dick Cox, but he's closed out of business now, he's sick.

Q.: I see, Dick Cox?

A.: (Affirmative)

Q.: Do you know does he have a telephone?

A.: No, he don't have a telephone.

Q.: Does he have a son or somebody named Jody Cox?

A.: That's right.

Q.: Apparently he doesn't have a phone either?

A.: No.

Q.: Is that right?

A.: No, he didn't have a phone either.

Q.: I see. Would you be able to come to Columbus, Ohio to tell the Court on Monday, July 19, at 1:30 what you've just said to me?

A.: Well, if I could get away, I've got business here and I wouldn't want to say—when did you say it was?

Q.: That's at 1:30 p. m., that's 1:30 in the afternoon, on Monday, July 19, that's a week from next Monday?

A.: June, July?

Q.: July, yes.

A.: Yes, well I wouldn't say that I could, I'd have to be contacted again. We've got—I have two or three businesses here and it's hard to get away, you know.

Q.: Let me ask you this, would you be willing to sign an affidavit under oath?

A.: Yes, sir, yes, sir.

Q.: If I were to send one to you?

A.: Yes, sir.

Q.: Now what is your exact address so I could do that?

A.: George Cox, Crossville, Tennessee, Route 1.

Q.: Route 1?

A.: Yes, he was here two or three days or a day or two before he was arrested.

Q.: I see. O. K. Thank you very much, sir.

A.: All right, just write me a letter and I'll have it notarized and sent back.

Q.: Fine. Thank you, sir.

Further, affiant sayeth not.

GEORGE COX

APPENDIX B

AFFIDAVIT

STATE OF TENNESSEE
COUNTY OF CUMBERLAND, ss:

GENE DAVIS, Route 1, Crossville, Tennessee, being first duly cautioned and sworn, deposes and says:

Q.: All right, your name is Gene Davis?

A.: That's right.

Q.: How do you spell that?

A.: Gene.

Q.: Gene? And what's your address, Mr. Davis?

A.: Crossville, Route 1.

Q.: Crossville, Route 1? Do you know Ernest Cox?

A.: Yes.

Q.: How long have you known him?

A.: Oh, I've known him around fifteen years.

Q.: Fifteen years? Are you related to him?

A.: Yes.

Q.: What's your relationship?

A.: First cousin.

Q.: You're a first cousin? Do you know whether or not Mr. Cox was in Crossville, Tennessee on November 10, 1965?

A.: I believe he was.

Q.: How do you, why do you think he was?

A.: Well because I talked to him then.

Q.: I see. Did you see him personally?

A.: Yes.

Q.: Do you remember when he was arrested?

A.: Yes.

Q.: How long had he been in Tennessee before he was arrested?

A.: A couple of days.

Q.: A couple of days? You had actually seen him?

A.: That's right.

Q.: I see. Would you be able to come to Columbus, on July, Columbus, Ohio on July 19, to testify?

A.: I don't know if I can or not.

Q.: Would you make an effort to?

A.: I'll try.

Q.: All right. Have I promised you anything to say what you've said?

A.: No.

Q.: I see. O. K., thank you very much sir.

A.: O. K.

Q.: Goodbye.

A.: Goodbye.

Further affiant sayeth not.

GENE DAVIS

CELEBREZZE, Circuit Judge (concurring in the result).

I concur in the decision to reverse the judgment of the District Court on the ground that Petitioner-Appellee had failed to exhaust his state remedies.

I also concur in the determination that the District Court was clearly erroneous in finding sufficient evidence to support Petitioner-Appellee's claim that he had been denied effective assistance of counsel and due process of law in his state court trial. I do not believe, however, that the latter determination requires that this Court weigh the evidence which was before the District Court and make its own findings of fact. I believe it is especially improper for this Court, or any court, to draw any inference from a defendant's refusal to take the stand in his own behalf.