**Robert COBB, Petitioner–Appellant,**

v.

**E.P. PERINI, Respondent–Appellee.**

**No. 86–3385.**

United States Court of Appeals, Sixth Circuit.

Decided and Filed Nov. 6, 1987.

Argued Feb. 10, 1987.

Donald N. Krosin (argued), Dep. Federal Public Defender, Cleveland, Ohio, for petitioner-appellant.

Christine Manuelian, Asst. Atty. Gen., Columbus, Ohio, John Gideon (argued), for respondent-appellee.

Before MARTIN, WELLFORD and NELSON, Circuit Judges.

PER CURIAM.

On September 16, 1981, appellant, Robert Cobb, was convicted in Ohio state court of voluntary manslaughter in connection with the death of his wife. Cobb, represented by his own attorney, appealed to the state court of appeals, which affirmed his conviction. The Ohio Supreme Court denied Cobb's appeal

Cobb filed this petition for habeas corpus in 1985, and the district court referred the case to a magistrate. The district court followed the magistrate's recommendation to dismiss the petition. There are four issues on this appeal: (1) whether Cobb has exhausted his state remedies; (2) whether admission in evidence of inculpatory statements made by Cobb inside a police station, prior to being given his *Miranda* rights, was violative of the fifth amendment privilege against self-incrimination; (3) whether Cobb's sixth amendment right to effective assistance of counsel was denied by his retained counsel's failure to object to testimony about an out-of-court confrontation between Cobb and a police officer; and (4) whether there was a failure of proof of the *corpus delicti* of the crime.

### I.

During the late evening hours of May 22, 1981, Linda Ford Cobb, defendant's wife, was taken to the emergency room at Huron Road Hospital, East Cleveland, Ohio. She was suffering from severe injuries and was unconscious and unable to talk or otherwise communicate with hospital personnel or police. Cobb followed the ambulance to the emergency room, and as a result of a disturbance involving a belligerent Cobb and hospital security guards, Cobb was ar-

rested and taken by East Cleveland police officers to their headquarters. Later, in the early hours of May 23, 1981, two officers of the Cleveland Police Department, Nolan and Gebrosky, went to the emergency room in response to orders to investigate a "possible assault," and conducted several interviews at the hospital. They learned that Cobb had been arrested and was taken to the East Cleveland police station. The Cleveland officers called the East Cleveland police and asked them "to hold the male until we arrived because we wanted to question him as to what happened to his wife."

Around 1:00 a.m., Nolan and Gebrosky arrived at the East Cleveland police headquarters. Cobb was brought into the hallway leading to the prisoners' cells. Cobb, dressed in pants and a t-shirt, was not handcuffed. The policemen were there to question Cobb about a "possible assault;"[1] they did not read him his *Miranda* rights before questioning him.

The officers asked Cobb "what had happened at his house; Cobb answered that "nothing happened." They then asked "why his wife was in the hospital", and Cobb allegedly responded "We had a fight" and "I hit her a couple of times." Thereafter, they arrested Cobb for felonious assault and domestic violence, and then read him his rights. When asked if he understood his rights, Cobb allegedly said "Yes, I have been around before." Asked again what happened, Cobb said "My wife will never prosecute me."[2] Petitioner's motion to suppress the pre-*Miranda* warning statements or answer was overruled.

Petitioner was originally charged with felonious assault. When his wife died on

---

1. The officers had learned that Cobb was arrested at the hospital, where he insisted on being in his wife's treating room when she awoke. Nolan testified:

   Q: At the time that you went [to the East Cleveland police station], you had already talked to a number of people at Huron Road Hospital, is that correct?
   A: We talked to—I don't know about a number. We talked to different people at the hospital.
   Q: As the result of that you had learned that the husband had been in the house at the time

   that the fracas or whatever happened, took place, and they called the ambulance, is that correct?
   A: That's correct.

2. Cobb testified, on the other hand, that "When they gave me my property, I started to go out the door and the two policemen come in the door, standing there, put me in handcuffs and told me that I was under arrest for felonious assault.... They never asked me anything. They just took me out."

June 3, 1981, he was indicted for murder. Cobb was also indicted for the attempted murder of a Cleveland policeman who served Cobb with an arrest warrant for the first charge. The charges were severed for separate trials and the attempted murder issue is not before this court.

During the trial, the deputy coroner, Dr. Elizabeth Balraj, testified about the victim's injuries. Doctor Balraj testified about the apparently serious head and body injuries to Mrs. Cobb. She admitted that the injuries sustained by the victim "are consistent with this woman falling down a flight of some eight or nine or twelve stairs to a basement."

Cobb testified in his own behalf that when he got home he found his wife lying at the bottom of the stairs in the basement. His defense was that Mrs. Cobb fell down the stairs and injured herself. On cross-examination, Cobb was asked about a "conversation" between him and officer Nolan during a recess in the trial after officer Nolan's testimony. Cobb admitted calling Nolan a liar ("You lie good"), but denied threatening the officer. Defense counsel did not object to these questions. In rebuttal, Nolan testified that in a short recess during his earlier testimony, Cobb came up to him in the hallway and, in front of officer Gebrosky, "called me an f'ing liar and threatened me."

The jury found Cobb guilty on the first count of the indictment of the lesser included offense of involuntary manslaughter. He was sentenced to a term of seven to twenty-five years imprisonment. Cobb appealed the judgment to the Ohio Court of Appeals, raising two issues: one dealing with suppression of his alleged confession, the other was, essentially, an attack on the sufficiency of the evidence. After the Ohio appellate court had affirmed Cobb's conviction, the Supreme Court of Ohio denied him leave to appeal.

Shortly thereafter petitioner filed a petition for writ of habeas corpus. At Cobb's request, the petition was dismissed without prejudice. Cobb then sought post-conviction relief in the state courts pursuant to Ohio law. He raised three issues in these state proceedings, all of which were variations on a theme of ineffective assistance of counsel.

The Ohio trial court denied post-conviction relief and made specific findings of fact and conclusions of law. Cobb alleges that he did not receive notice of the denial of his post-conviction petition and therefore was prevented from seeking appellate review of that denial.

Cobb then filed this petition for habeas corpus relief, pressing the three claims raised in his state post-conviction action, along with an allegation that his conviction was obtained in violation of the privilege against self-incrimination (an issue raised in his first appeal).

The magistrate to whom this petition was referred recommended its dismissal. The district court agreed with the recommendation upon review. When Cobb filed a notice of appeal, the district court denied a certificate of probable cause; we subsequently granted the certificate.

## II.

■ Before discussing the merits of Cobb's appeal, we first consider whether Cobb has exhausted his available state remedies. Section 2254(b) requires exhaustion of "the remedies available in the courts of the State" before a federal court can grant an application for the writ of habeas corpus. Two of the issues presented on appeal may not have been exhausted in the state courts. Because both parties assumed that Cobb had exhausted available state remedies and neither party had addressed the exhaustion issue, we ordered the parties to file supplemental briefs addressing this issue.

Here, as in *Granberry v. Greer,* — U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the state did not initially raise the exhaustion issue;[3] thus, it is "appropriate for the

---

**3.** We recognize the evident differences between this case and *Granberry:* here, the State affirmatively argues that Cobb has exhausted his state remedies; in *Granberry,* the state argued for the first time on appeal that the petitioner had failed to exhaust.

court of appeals to take a fresh look at the issue" and "determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Id. Granberry* casts considerable doubt on our prior decisions requiring total exhaustion. *See, e.g., Bowen v. Tennessee,* 698 F.2d 241 (6th Cir.1983) (en banc).

The two issues involving questionable exhaustion were pressed before one or more levels of the Ohio court system. We conclude, in the absence of objection by respondent, that Cobb has sufficiently exhausted his state remedies because the interests of comity, federalism, and wise use of judicial resources will be best furthered by "addressing the merits forthwith." Our conclusion is bolstered, moreover, by the fact that the Ohio legislature recently repealed the statute which supported our concern about exhaustion, so that, even if Cobb had not previously exhausted his state remedies, further review in the Ohio courts may now be foreclosed. *See* Ohio Rev.Code Ann. § 2953.05 (page 1982), *repealed by* 141 v H 412, § 2 (Dec. 16, 1986) (effective March 17, 1987); *see also Cox v. Cardwell,* 464 F.2d 639, 645 (6th Cir.1972) (quoting *Allen* ); *Allen v. Perini,* 424 F.2d 134, 140 (6th Cir.) ("It is re-emphasized that prisoners convicted on a plea of not guilty must exhaust their remedy of delayed appeal under § 2953.05 as well as their remedies under the Ohio post-conviction statute, § 2953.21, et seq. as a prerequisite to seeking relief by federal habeas corpus."), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). *But cf. Meeks v. State,* 8 Ohio App.2d 8, 220 N.E.2d 378, 378 (1966).

## III.

We now turn to Cobb's first issue, concerning admissibility of the inculpatory statements he made. Cobb argues that admission of this testimony was reversible error of constitutional magnitude because he was not advised of his rights to remain silent and to the assistance of counsel prior to questioning. He urges that, under the circumstances, a reasonable person would have believed he was in custody, that the questions asked of him constituted custodial interrogation, and that he did not knowingly waive his fifth amendment rights.

The state submits, in reply, that under the circumstances the questions asked of him were in the nature of permissible stop-and-detain questioning of a potential witness to a possible assault, and denies that he was then in custody. The district court ruled in respect to this issue:

> As to the issue of pre-custodial or custodial statements, the Court finds from the record that petitioner was not in custody as that term is used in *Miranda* and expanded upon by latter [sic] decisions. The Court finds that the recent case of *United States v. Hensley,* [469 U.S. 221], [1]05 S.Ct. 675 [83 L.Ed.2d 604] (1985) clearly is authority for the right of police officers to briefly stop and ask questions. See also, *Berkemer v. McCarty,* [468 U.S. 420], 104 S.Ct. 3138 [82 L.Ed.2d 317] (1984). Cf. *United States v. Manbeck,* 744 F.2d 360 (4th Cir.1984) patrol car statements. The police station hallway questioning of petitioner falls well within the parameters of the above authorities.

The "custody" of Cobb, the district court indicated, was not of the *Miranda* variety; rather, it was of a kind of *Terry*-style[4] investigatory detention. It was therefore held not to be necessary to precede any questioning with the *Miranda* warnings.

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court has analogized fourth amendment *"Terry* stops" to determining whether a suspect is "in custody" for fifth amendment purposes. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). In the context of a discussion of "interrogation" for *Miranda* purposes, however, it has distinguished between the fifth and sixth amendment claims, saying that the definitions "are not necessarily interchangeable, since the policies underlying the two constitutional protections are quite distinct." *Rhode Island v. Innis,* 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980); *see United States v. Manbeck,* 744 F.2d 360, 377–79 (4th Cir.1984).

We must decide whether the officers' question, "what had happened at his house?" was appropriate before informing Cobb of his "rights." *See Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). In *Miranda,* the Court stressed that informing defendants of their rights was necessary before any *"in-custody"* interrogation of persons suspected or accused of crime" could be attempted.[5] 384 U.S. at 467, 86 S.Ct. at 1624 (emphasis added); *see Berkemer v. McCarty,* 468 U.S. 420, 429, 104 S.Ct. 3138, 3144, 82 L.Ed.2d 317 (1984); *Estelle v. Smith,* 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981); *United States v. Reynolds,* 762 F.2d 489, 493 (6th Cir.1985). Was Cobb "in custody" at the time officers Nolan and Gebrosky questioned him?

■ Determining whether a given defendant is "in custody ... or otherwise deprived of his freedom of action" by the authorities for *Miranda* purposes is a difficult proposition. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' ..., the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)). The test is objective: would a reasonable man in the defendant's position, knowing the facts as the defendant knew them, have felt that he was under arrest or was "otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629; *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is

how a reasonable man in the suspect's position would have understood his situation.") (footnote omitted); *United States v. Reynolds,* 762 F.2d 489, 492–93 (6th Cir.1985). Whether a person is in custody is a question of law to be determined by the court before deciding whether to admit testimony obtained before a defendant was given his *Miranda* warnings. *See* Fed.R.Evid. 104(a) ("Preliminary questions concerning ... the admissibility of evidence shall be determined by the court".); *cf. Sullivan v. State,* 666 F.2d 478, 483 (11th Cir.1982) ("Whether a valid waiver of constitutional rights was made is a question of law for consideration on appeal.") (citing *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)).

The Supreme Court has "explicitly recognized that *Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.' " *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (citing *Mathiason* ); *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam); *see also United States v. Harris,* 611 F.2d 170 (6th Cir. 1979); *United States v. Manbeck,* 744 F.2d 360, 379 (4th Cir.1984) ("*Miranda* warnings are not required simply because one is questioned in a police car.").

■ A fair construction of the district court's decision in this case was that he concluded that a reasonable person in Cobb's position would not have thought he was "in custody" with respect to suspicion of his wife's murder at the time the Cleveland police generally questioned him about the events at his house. He was not charged, not told that he was being investigated for any suspected homicide, nor was there a basis to charge him about the events surrounding his wife's "fall." Even

---

5. "The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629. "To

summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.". *Id.* at 478, 86 S.Ct. at 1630.

if the police, under *Miranda* and *Berkemer*, should have advised Cobb that they were investigating a potential homicide, and we believe it to be a close question in this regard, we are not prepared to find reversible error in these circumstances. The question was whether Cobb, reacting as a reasonable person would have believed himself to be "in custody or otherwise deprived of his freedom of action in any significant way *with respect to the charge involved in the appeal*" (emphasis added); *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629; *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam); *United States v. Reynolds,* 762 F.2d 489, 493 (6th Cir.1985). Even if the district court were deemed to have reached an erroneous conclusion on this difficult issue, we would find the error to be harmless under the totality of circumstances. *Cf. Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Delaware v. Van Arnsdell,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

### IV.

■ The second basis of reversible error alleged by Cobb is that he was denied the effective assistance of counsel by his attorney's failure to object during testimony about a hallway confrontation between Cobb and a policeman during a trial recess. Cobb allegedly called the officer "an f'ing liar and threatened [him]." On cross-examination Cobb's attorney established that Officer Nolan was dressed in uniform and was carrying his weapon. Cobb had earlier admitted to calling Officer Nolan a liar, but he denied threatening him.

Cobb now argues that "[a] simple objection ... would not have spotlighted the incident before the jury and should have resulted in the inquiry being aborted by the trial court." This failure to object, coupled with the otherwise sparse evidence of guilt, brings about Cobb's claim of unfair prejudice.

Our decision is guided by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court established a two part inquiry:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. In determining whether an attorney's conduct was deficient, the Court stressed that "the proper standard for attorney performance is that of reasonably effective assistance", *id.,* "viewed as of the time of counsel's conduct", and considered "in light of all the circumstances". *Id.* at 690, 104 S.Ct. at 2066. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

On these facts we need go no farther than the first part of the *Strickland* analysis. We hold that Cobb's unsupported accusations of deficient conduct fall short of overcoming the strong presumption that his attorney's failure to object was sound trial strategy. First, it is not at all clear that any objection that Cobb's attorney might have made would have been sustained and the evidence excluded. Cobb does not offer any basis for exclusion of this testimony. Even assuming that it would have been excluded upon objection, it was reasonable for Cobb's attorney to believe that the evidence was relevant and

material, or to have made a strategic decision not to challenge the testimony, thereby focusing undue attention on the matter. Thus, Cobb's attorney's conduct was not demonstrably unreasonable or deficient. Second, Cobb's attorney, by affidavit, suggests (1) that he "was never made aware of the fact that the defendant had conferred with the police ... until the questions were asked", and (2) "[o]nce the question was out, [he] decided it would do more harm to object than to trivialize it." This does not show an unsound trial strategy. Finally, counsel's cross-examination of the officer elicited sufficient information to trivialize the matter and to imply that Cobb was not capable of then harming the armed officer whom he had allegedly threatened. Cobb was not denied the effective assistance of counsel in violation of the sixth amendment.

## V.

■ Finally, we briefly address an issue raised by Cobb in his pro se brief to this court: whether there was a failure of proof of the *corpus delicti* of the crime. To the extent that Cobb is arguing that the prosecution did not sufficiently connect Mrs. Cobb's death to either Mr. Cobb or some criminal conduct, we summarily reject this argument. The prosecution by circumstantial evidence demonstrated that Mrs. Cobb's injuries could have been inflicted by an assault and that Mr. Cobb was the assaulting party. To the extent Cobb argues that the prosecution did not prove the fact of Mrs. Cobb's death by an alleged criminal agency, we also summarily reject this argument based on the testimony of the coroner.

## VI.

The judgment of the district court denying the petition for writ of habeas corpus is AFFIRMED.

WELLFORD, Circuit Judge, concurring.

I concur in the result reached but have some difficulty with part III of the opinion because I cannot discern, from the district judge's order herein, that he considered all the implications of *Miranda* in respect to Cobb's custodial situation at the time of questioning in the totality of the circumstances. I believe the preferable course would be to remand to the district court for more definitive findings in this context. As to part III of the opinion, then, I would prefer to remand to the district court for its reasoned consideration whether or not warnings were necessary before the police asked Cobb any questions in the East Cleveland police headquarters.

The district court relied principally upon a "stop" case, *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), in its summary conclusion that Cobb was "not in custody" when he made the statements implicating himself. *Hensley* made no reference whatever to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) nor to later cases construing that landmark decision. The district court made a "see also" reference to *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). That Supreme Court case deals both with the *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) "stop" situation and with the *Miranda* issue with regard to police questioning of a traffic offender both inside the jail and at the scene of the traffic offense. The district court, however, made no analysis of the facts as he found them in this case in relation to the facts and the court's discussion in *Berkemer*, which was considering an appeal from a divided panel of this court. *See McCarty v. Herdman*, 716 F.2d 361 (6th Cir.1983). Despite my preference for a remand, I am disposed to agree that in any event a harmless error analysis would require us to affirm the district court and deny the petition for habeas corpus. I therefore concur in the result reached.