**Arnold LOWE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22044.**

United States Court of Appeals
Ninth Circuit.

Feb. 25, 1969.

**1392**

Robert B. Morrill (argued), San Francisco, Cal., for appellant.

Morton Sitver (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Phoenix, Ariz., for appellee.

Before ELY and CARTER, Circuit Judges and PECKHAM *, District Judge.

JAMES M. CARTER, Circuit Judge:

Appellant was convicted of a violation of the Dyer Act and appeals.

## THE QUESTION

The appellant contends that unconstitutionally obtained statements made by him, were used against him at his trial. There is no disagreement as to the facts surrounding the questioning of the appellant by an Arizona Deputy Sheriff; the four-fold warnings set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) were not given. Therefore, the questions for this court to determine are: (1) whether appellant was in "custody or otherwise deprived of his freedom of action in any significant way," as defined by Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, and (2) were the warnings required under the facts of this case.

## FACTS

At approximately 8:00 o'clock in the evening of February 6, 1967, Russell Dunham, Deputy Sheriff of Yavapai County, Arizona, stopped a 1965 Dodge Monaco with Ohio license. The auto had been travelling west on Route 66 in an erratic manner. Appellant Lowe, the driver, and one passenger were in the auto when Deputy Dunham approached and began his inquiry.

The officer first asked that appellant present his driver's license and vehicle registration. Appellant produced neither but did present his Social Security card for identification. Deputy Dunham then asked appellant a series of questions concerning appellant and the car. Deputy Dunham asked the appellant to identify the owner of the auto. Appellant replied that it belonged to a distributor in Ohio for whom he worked and for whom he was selling merchandise which was in the car.

Deputy Dunham then asked the name of the employer. Appellant answered that he couldn't remember. The deputy then asked appellant if he had permission to drive the car. Appellant replied in the affirmative. Deputy Dunham then asked appellant where he was going and whether he had any money. To this appellant answered that he was without funds and was going to California to look for work. No more questions were put to the appellant by Deputy Dunham.

Appellant was not told that he was under arrest before or during his questioning, but Deputy Dunham was permitted to testify that he intended to keep the appellant where he was. However, there is nothing in the record that indicates Deputy Dunham told the appellant anything in regard to his freedom to leave the scene.

Arizona Highway Patrolman Melvin Risch then arrived on the scene. Appellant was subsequently incarcerated and questioned by Agent T. Michael Seikel, Jr., of the Federal Bureau of Investigation. The statements made to Agent Seikel were suppressed by the trial court. A motion to suppress the statements

---

* Robert F. Peckham, United States District Judge, Northern District of California, sitting by designation.

made to Deputy Dunham was denied after hearing, and the statements were admitted against the appellant at trial. This is the claimed error.

## DISCUSSION

### (1) On the Scene Questioning.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), states:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (p. 444, 86 S.Ct. p. 1612).

At the same place in the opinion the Court also clarified the meaning of "focus of the investigation" as used in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In a footnote the Court stated that "focus" is defined in the same manner as custodial interrogation, as set forth above. Id. at 444 n. 4, 86 S.Ct. 1602.

*Miranda* also stated:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. See Escobedo v. Illinois, 378 U.S. 478, 492 [84 S.Ct. 1758, 1765, 12 L.Ed.2d 977]. * * * *General* on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. *In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.*" (Id. p. 477–478, 86 S.Ct. p. 1629. Emphasis added).

At a later point in the opinion, the Court further emphasized that "traditional investigatory functions" carried on by law enforcement were not meant to be affected by the decision.

"In announcing these principles, we are not unmindful of the burdens which law enforcement officials must bear, often under trying circumstances. We also fully recognize the obligation of all citizens to aid in enforcing the criminal laws. This Court, while protecting individual rights, has always given ample latitude to law enforcement agencies in the legitimate exercise of their duties. The limits we have placed on the interrogation process should not constitute an undue interference with a proper system of law enforcement. As we have noted, our decision does not in any way preclude police from carrying out their traditional investigatory functions." 384 U.S. at 481, 86 S.Ct. at 1631.

 Therefore, while persons suspected of crimes were given greater protection from the coercive pressures of police in-custody questioning,[1] the Court in

---

**1.** The factual postures of the four cases decited in *Miranda*, and the use of language throughout the opinion supports this more limited interpretation of "in custody."

In Miranda v. Arizona, No. 759, Ernesto Miranda was taken to " 'Interrogation Room No. 2' of the detective bureau" where he was questioned by two police officers. The questioning in Westover v. United States, No. 761, took place in a police station while the defendant was under arrest. In California v. Stewart, No. 584, the defendant, except "during the first interrogation session, when he was confronted with an accusing witness," was "isolated with his interrogators" in a police station house. In Vighera v. New York, No. 760, the defendant was taken to the 17th Detective Squad headquarters, then to the 66th Detective Squad headquarters and finally moved to the 70th precinct in Brooklyn. He was questioned at the two latter places.

*Miranda* did not intend to abolish the accepted police practice of making general on the scene inquiries of citizens to determine whether a crime has been committed or is in progress. See Kamisar, Custodial Interrogation Within the Meaning of Miranda, in Criminal Law and the Constitution—Sources and Commentaries, 341 (Mich. Inst. of Continuing Legal Educ. 1968).

■ The questioning of a driver of a stopped car on an open highway by one policeman, without more, cannot be characterized as a "police dominated" situation or as "incommunicado" in nature. In point are Wilson v. Porter, 361 F.2d 412, 415 (9 Cir. 1966); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, 479 (1968); Schnepp v. State, 437 P.2d 84, 85 (Nev.Sup.Ct.1968). See United States v. Thomas, 396 F.2d 310 (2 Cir. 1968); and United States v. Gibson, 392 F.2d 373 (4 Cir. 1968), discussed later herein.[2]

In Terry v. Ohio, 392 U.S. 1, 22–23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) the Supreme Court considered the on-the-street confrontations of police and citizens. Even though the majority opinion concerns the right of the officer to "stop and frisk," it is difficult to conceive how a policeman is to avail himself of the protections outlined in Terry v. Ohio, unless he is able to ask questions of the person he has stopped.

■ The questions asked by Deputy Dunham at the shoulder of Route 66 in the presence of a passenger certainly did not create a "compelling atmosphere". When a law enforcement officer stops a car and asks the driver for identification, a vehicle registration slip, and upon receiving unsatisfactory answers further asks the driver's destination and business, no "in-custody" interrogation, as discussed in *Miranda*, takes place. This general on the scene questioning is a well accepted police practice; it is difficult to imagine the police warning every person they encounter of his *Miranda* rights. This is why the opinion in *Miranda* expressly excluded "on-the-scene questioning" from the warning requirements. The statements made by appellant Lowe were a product of "general on-the-scene questioning" which is not subject to the warning requirements of *Miranda*. See Kamisar, supra, at 342–43.

### (2) *Permissible Scope of On-The-Scene Questioning.*

We must consider the permissible range of inquiries that can be made in "on-the-scene questioning."

This Circuit held in Arnold v. United States, 382 F.2d 4 (9 Cir. 1967), that questions which relate directly to a suspected crime after the officer's suspicion has been aroused, may be permissible as on-the-scene inquiries. After the defendant in the case had been pointed out by a manager from a bank which had just been robbed, a police officer at the scene ordered the man to step away from the crowd. He further ordered him to remove his hands from his pockets. The officer then asked him what he was doing in the bank which had just been robbed. The answer was held admissible in the subsequent trial, and not barred by the decision of Escobedo v. Illinois, 378 U.S.

---

As the court stated: "In each, the defendant was questioned by police officers * * * in a room in which he was cut off from the outside world." (384 U.S. at 445, 86 S.Ct. at 1612). When referring to interrogations throughout the opinion the court seems always to allude to settings such as those of the four cases decided.

2. For other cases on non-custodial questioning, see Clark v. United States, 400 F.2d 83 (9 Cir. 1968); Boyle v. United

States, 395 F.2d 413 (9 Cir. 1968); White v. United States, 395 F.2d 170, 174 (8 Cir. 1968), cert. denied 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968); United States v. Messina, 388 F.2d 393, 395 (2 Cir. 1968); Hicks v. United States, 127 U.S.App.D.C. 209, 382 F.2d 158, 162 (1967); Evans v. United States, 377 F.2d 535, 536 (5 Cir. 1967). See Rosario v. Guam, 391 F.2d 869 (9 Cir. 1968).

478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, supra.

> "Appellant was a member of the crowd, unknown and free to depart at will. The officer had no choice but to accost him. Asking appellant to remove his hands from his pockets and to step away from the crowd were measures dictated by minimal prudence for the offense commonly involves the use of weapons. The action also minimized the embarrassment and indignity to which appellant might be exposed. No force was used. The questions asked were limited to inviting an exculpatory explanation of appellant's presence at the scene of the crime.

> In light of these circumstances, we think the detention was reasonable and therefore appellant's answers to Officer Crawford's questions were properly admitted in evidence." 382 F.2d at 7.

In Allen v. United States, 129 U.S. App.D.C. 61, 390 F.2d 476 (1968) (a car stop case) the officer asked the driver to produce his license and vehicle registration; the driver could produce neither. The officer then noted that the passenger was bleeding profusely about the head as if he had been beaten. The officer then asked the driver: (1) who owned the car; (2) where it came from; and (3) where the driver had gotten the car. The replies were admitted into evidence. The questions asked were held to be within the "on-the-scene" exception of Miranda.

In United States v. Gibson, 392 F.2d 373 (4 Cir. 1968), an officer was alerted to the identity of an auto thief, and the description of the car which had been stolen. Upon finding the car in front of a bar, the officer stopped, went inside and asked the defendant to step out to the sidewalk. The officer asked the suspect: (1) where he lived; (2) how long he had been in town; (3) whether he owned a car; (4) the means of transportation he had used to get into town; (5) whether he was employed; and (6) whether he owned the car parked at the curb (previously identified as stolen). The answers to these questions and the subsequent statement "[t]here's no use to lie to you. That is my car," were held to be admissible notwithstanding the absence of Miranda warnings.

> "This court does not read Miranda as requiring officers to preface with a warning all non-coercive questioning conducted in the course of a routine investigation as in the circumstances of this case. * * *

> * * * * * *

> "In the complete absence of the element of coercion, actual or potential, or police dominance of the individual's will, the mild police activity shown here should not prevent the introduction of statements freely made. The evils with which the Court was concerned in Miranda are not present here." Id. at 376.

The case of United States v. Thomas, 396 F.2d 310 (2 Cir. 1968), is also on point. Three New York Central Railroad Policemen [3] in two cars, observed two men, each carrying a carton on his shoulder. There was usually little pedestrian traffic on that street at that hour, so their suspicions were aroused. Both cars stopped and the three policemen approached the two men. One tried to flee and fell; he was helped to his feet by one officer who asked him the following questions: (1) where he had obtained the carton; (2) whether he had a bill of sale for it; and (3) whether he had stolen it. The other two officers questioned the second suspect: they asked the following questions: (1) where he

---

3. In regard to the status of the railroad policeman, the court stated:
"It is true that the officers involved were not regular police officers who generally make such investigations. However, they were appointed by the superintendent of state police under a New York statute which gives them the powers of policemen 'for the preservation of order and of the public peace, and the arrest of all persons committing offenses upon the land of or upon property in the custody of or under control of' the railroad." Id. at 314.

had obtained his carton; and (2) on what street was the corner he described. These questions and the replies were held admissible even though no *Miranda* warnings were given

> "Under these circumstances, the few questions asked appellants on the street to determine whether any crime had been committed were more in the nature of 'on the scene' questioning as part of the fact-finding process than custodial interrogation." Id. at 314.

■ The questioning engaged in by Deputy Dunham did not exceed the permissible scope of the "on-the-scene" exception of *Miranda*.[4]

### (3) *An Objective Standard for Determining Custody.*

The record shows that the officer testified he had decided not to allow the appellant to leave the scene. The importance of this unexpressed intent must be considered. It is present in many cases where a police officer detains a person to make inquiries.

The relevance of "police intent" is not apparent from the *Miranda* decision. The Court's decision in *Miranda* clearly abandoned "focus of investigation" as a test to determine when rights attach in confession cases. 384 U.S. at 444, n. 4, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A. L.R.3d 974. The test now is whether or not the person "has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444, 86 S.Ct. at 1612.

In Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Supreme Court held that whether or not the police have probable cause for arresting the suspect, has no relevance as to when the person's right to receive warnings attaches.

> "Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." Id. at 309–310,

4. Numerous state cases also indicate the possible breadth of "on-the-scene" questioning. People v. Alesi, 67 Cal.2d 856, 64 Cal.Rptr. 104, 434 P.2d 360 (1967) in a marihuana case, "Is this weed?" held permissible. People v. Hazel, 252 Cal. App.2d 412, 60 Cal.Rptr. 437 (1967). In a pawn shop, officer asked a man attempting to pawn a guitar whether he owned it; permissible. White v. United States, 222 A.2d 843 (D.C.Ct.App.1966). Man walking down the street with a car battery in his arms at 2:30 a. m. was asked: who he was; where he was going; where the battery came from. Held not barred for lack of warnings. Duffy v. State, 243 Md. 425, 221 A.2d 653 (Md. Ct.App.1966). Policeman took knife from under pillow of sleeping man; awakened him and asked, "Is this the knife you used in the fight?" Held not to be "in-custody" interrogation and therefore admissible. Schnepp v. State, 437 P.2d 84 (Nev.Sup.Ct.1968). Policeman responding to a report of a burglary of a motel and theft of a television set, stopped the defendant's car near the scene of the crime; the officer saw a television in the car's front seat covered by a sweater.

He asked the defendant: (1) to whom the television belonged; and (2) how did he get it in the car. Held not within the class of questioning in which warnings are required. State v. Meadows, 272 N.C. 327, 158 S.E.2d 638 (1968). Officer responded to the scene of a shooting; several people were standing around a wounded man. Officer asked the defendant, "What happened?" He answered, "I shot him." Held to be on-the-scene questioning and not "in-custody" questioning. State v. Taylor, 437 P.2d 853 (Or.Sup.Ct.1968). Police questioning of the driver of an auto involved in an accident. Held to be on-the-scene questioning described in Miranda. State v. Persinger, 433 P.2d 867 (Wash.Sup.Ct.1967). Prisoner trapped in the act of escaping from a state penitentiary, was approached by a guard while still standing on a roof. He was asked why he hadn't followed his partner down the rope and over the wall. He replied that he "was discouraged by the ululation [sic] of the dogs and the weaponry of the tower guards." Held not to be "in-custody" questioning.

87 S.Ct. at 417; see Kamisar, supra, at 364.

In Williams v. United States, 381 F.2d 20, 22 (9 Cir. 1967), this Court stated, "The fact that the officers had entertained an unexpressed intention to detain appellants had they compounded suspicion by refusing to answer and attempting to run does not amount to detention."

In Allen v. United States, 129 U.S.App. D.C. 61, 390 F.2d 476 (1968), footnote 3 discloses that "Defense counsel asked whether the officer having observed a bleeding man, appellant was free to go. The officer replied 'no,' since he was investigating the ownership of the car. * * * ". In the opinion the Court said,

> "Nor is it possible or desirable to simplify the matter by saying that whenever any officer is prepared to detain an individual he may not ask any questions." Id. p. 479.

The California Supreme Court's decision in People v. Arnold, 66 Cal.2d 438, 58 Cal.Rptr. 115, 426 P.2d 515 (1967), appears to state the correct rule—an objective, reasonable man test.

> "On retrial the attention of the trial court should be directed to the precise language used by the deputy district attorney in summoning Mrs. Arnold to his office, to any statements of the deputy not transcribed, made before or after formal interrogation, and to the physical surroundings. The trial court should also consider the extent to which the authorities confronted defendant with evidence of her guilt, the pressures exerted to detain defendant, and any other circumstances which might have led defendant *reasonably to believe that she could not leave freely.*" Id. at 449, 58 Cal.Rptr. at 122, 426 P.2d at 522 (emphasis added); accord Kamisar, supra, at 362, 364, 366.

A simple example shows the fallacy of reliance on the intent of the officer. Suppose X owes money to Y and Y determines to collect it. Y decides that when he next confronts X he will demand his money and if X refuses to pay, Y will collar him, take X forcibly to a private place and forcibly take sufficient money to pay the debt; in other words, make a false arrest to secure the money. Y stops X on the street, demands his money and gets it. Although Y's intent was to detain or "arrest" if necessary, certainly what transpired was not a detention or an "arrest." No court would so hold.

It follows that *the time when* the officer's intent to arrest is formed has no bearing on the question of whether or not there exists "in-custody" questioning. Whether a person is in custody should not be determined by what the officer or the person being questioned thinks; there should be an objective standard. Although the officer may have an intent to make an arrest, either formed prior to, or during the questioning, this is not a factor in determining whether there is present "in-custody" questioning. It is the officer's statements and acts, the surrounding circumstances, gauged by a "reasonable man" test, which are determinative.

Deputy Dunham's unexpressed intent to restrain appellant if appellant attempted to leave, does not create "in-custody" interrogation.

The judgment of conviction is affirmed.