**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene Joseph LeQUIRE and Roger Morris Thundershield, Defendants-Appellants.**

**No. 28043
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 7, 1970.

Ben Hilbun, Jr. (court appointed), Starkville, Miss., for defendant-appellant LeQuire.

James P. Dean (court appointed), Corinth, Miss., for defendant-appellant Thundershield.

H. M. Ray, U. S. Atty., J. Murray Akers, Norman L. Gillespie, Asst. U. S.

Attys., Oxford, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge.

Eugene LeQuire and Roger Thundershield appeal from a jury verdict finding them guilty as codefendants of a violation of the Dyer Act, 18 U.S.C. § 2312. LeQuire was sentenced to serve three years, and Thundershield to serve four years, under the provisions of 18 U.S.C. § 4208(a) (2). The only issue on appeal is whether certain inculpatory statements made by them to a Mississippi highway patrolman and to an F.B.I. agent were admissible. We find that they were properly admitted into evidence, and we affirm.[1]

## I.

The undisputed facts, insofar as they are relevant to the issue on appeal, reveal that the owner of a 1966 Chevrolet Super Sport reported his car stolen from a parking lot in Fairview Park, Ohio, on January 24, 1969. Two days later, a Mississippi highway patrolman, Don Hill, met a blue 1966 Chevrolet Super Sport bearing Ohio license plate No. DU 910 speeding on Highway 14 in Winston County, Mississippi. He observed the car pull into a private driveway and its occupants enter a house for a short time, after which they returned to the car and began driving in the opposite direction from which they had been traveling when Hill first saw them. At this point, Hill stopped the car and asked the driver, Thundershield, for his driver's license. He replied that he did not have one, but gave Hill his name and told him that he was from Cleveland, Ohio. Thundershield also replied that he could not produce proof of ownership of the car. The same questions were asked of LeQuire, who also stated that he could not prove ownership of the car. No questions were directed to the other three passengers. Hill then told Thundershield that if he could not produce some type of identification, he would be given a citation for failing to have a driver's license in his possession. He was not placed under arrest, but was told to follow Hill to the office of the Justice of the Peace. It is undisputed that at this time Hill did not know that a car matching the description of the car being driven by Thundershield had been stolen.

On arriving at the Justice of the Peace's office, LeQuire was granted permission to go to Thundershield's grandmother's house to get enough money to pay the fine. In the meantime, Hill radioed a check on the car to the National Crime Information Center, a procedure that Hill testified was routine when a person driving an out-of-state car cannot produce a driver's license or proof of ownership. He also testified that those facts, plus his observation of scratches around the ignition switch, had aroused his suspicion that the car might have been stolen. Hill had resumed his regular patrol duties when, approximately five minutes after dispatching the check, he received a radio report that the car was in fact stolen. He was trying to locate the car when he saw LeQuire driving it recklessly toward the Justice of the Peace's office. Hill stopped him, drove him to the office, and placed all five under arrest for possession of stolen property. LeQuire was also charged with reckless driving. The five occupants of the stolen car were taken to the Winston County jail and the federal authorities were notified. Hill did not question the defendants during or after their arrest. He neither saw nor spoke to them again until some months later at the preliminary hearing.

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Huth v. Southern Pacific Company, 5 Cir. 1969, 417 F.2d 526, Part I: and Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

It is undisputed that no questions were asked of the appellants from the time of their arrest to the time that a special agent for the F.B.I., Brent Warberg, interviewed them on the following day. It is also undisputed that before Warberg began his questioning, he read the proper *Miranda* warnings to each of the appellants from a printed form. The form also contained a waiver which LeQuire signed; Thundershield verbally indicated that he waived his rights to counsel and to remain silent. Neither appellant asked for an attorney at any time. They answered Warberg's questions willingly, without threat, promise, or coercion. Written statements were drawn from the brief questioning, which contained admissions by both appellants that they either drove or traveled in the car from Ohio to Mississippi, knowing that the car was stolen. A pretrial motion to suppress the statements was denied, and the statements were admitted into evidence at the appellants' trial. Unquestionably, the confessions constituted the most incriminating evidence offered against the appellants.

## II.

The appellants do not contend that the *Miranda* warnings given to them by Warberg were insufficient. They maintain that the statements they made to Warberg were rendered inadmissible because patrolman Hill did not advise them of their rights at the time that they were first stopped for speeding. They contend that from the time Hill asked them their names, they were not free to go and thus were technically under arrest. The appellants cite Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) for the proposition that in such a situation, the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) must be given. They argue that since they were "under arrest" at that time, the warnings given to them by Warberg came at the end of the interrogation process. The appellants liken their situation to one discussed by the Court in *Miranda:*

"In No. 761, Westover v. United States, the defendant was handed over to the Federal Bureau of Investigation by local authorities after they had detained and interrogated him for a lengthy period, both at night and the following morning. After some two hours of questioning, the federal officers had obtained signed statements from the defendant." 384 U.S. at 456–457, 86 S.Ct. at 1618.

\* \* \* \* \* \*

"At the time the FBI agents began questioning Westover, he had been in custody for over 14 hours and had been interrogated at length duing that period. \* \* \* Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed." 384 U.S. at 495–496, 86 S.Ct. at 1639.

The frivolousness of the appellants' contention that their situation is even remotely comparable to Westover's is at once apparent. The local authorities did not interrogate the appellants at all, much less to the extent that Westover was questioned. Moreover, even if the local police had questioned the appellants without giving the proper warnings, a later interrogation by agent Warberg would not necessarily require the conclusion that the federal authorities were beneficiaries of the pressure applied by the earlier questioning. See 384 U.S. at 496–497, 86 S.Ct. 1602. The issue is whether, under the facts of the case, an accused may be said to have intelligently waived his rights to counsel and to remain silent. It is clear that the appellants in this case did intelligently and voluntarily agree to Warberg's questioning.

We also disagree with appellants' argument that patrolman Hill was required to warn them of their rights at the time they were stopped for speeding. Nothing in *Miranda,* or in any

other case, requires that in this type of routine, on-the-scene questioning, the person detained must be given the *Miranda* warnings. On the contrary, such a requirement was specifically excluded in *Miranda*, 384 U.S. at 481, 86 S.Ct. 1602. See also, Lowe v. United States, 407 F.2d 1391 (9th Cir. 1969). Orozco v. Texas is clearly distinguishable.

Affirmed.