**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Craigen DeWayne HARRIS, Defendant-Appellee.**

**No. 79–5139.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 18, 1979.

Decided Dec. 20, 1979.

Hal D. Hardin, U. S. Atty., Nashville, Tenn., Andrew S. Gordon, Washington, D. C., for plaintiff-appellant.

Raymon Sauer, A. J. Archibald, Memphis, Tenn., for defendant-appellee.

Before MERRITT, BROWN and MARTIN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

The defendant was indicted for possession of a firearm as a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1). Prior to trial, the district court granted a motion to suppress certain statements made by the defendant before his arrest and the weapon seized on the basis of those statements. The government has appealed that decision. We believe that the suppression of this evidence was erroneous. Accordingly, we reverse.

The F.B.I. office in Nashville received information from its office in Milwaukee that Bruce Pinion, a fugitive with an outstanding arrest warrant for armed robbery, was staying in a Nashville motel. A photograph of Pinion was transmitted to the F.B.I. office at Nashville.

Three F.B.I. agents went to the motel and showed a room clerk the photograph of Pinion. The room clerk told them that one of the occupants of the motel closely resembled the person in the photograph. The agents proceeded to the room, knocked on the door, and identified themselves. The defendant admitted the agents into the room. A woman was also present in the room. One of the agents informed the defendant of their purpose and showed him a photograph of Pinion. The defendant acknowledged that he resembled the person in the photograph. He claimed, however, that he was not Bruce Pinion and that his name was Craigen DeWayne Harris. When the agents requested some form of identification which would support his claim, the defendant responded that he had no identification but that his identity could be established through the records of the Tennessee state prison where he had been incarcerated.

One of the agents then asked the defendant whether he had a weapon. The defendant admitted that he had a gun hidden under the mattress of the bed and pointed to the portion of the mattress where the gun was located. At the time of the statement, the defendant was standing near the location of the gun. One of the agents lifted the mattress and seized a loaded pistol.

At this point, the agents requested the defendant to accompany them to the federal building to establish his identity. The defendant, hoping to clear up the confusion, agreed to go with the agents. At the federal building, the defendant's identity was confirmed by means of fingerprints.

While the defendant's fingerprints were being checked, the F.B.I. agents turned the seized pistol over to an agent with the Bureau of Alcohol, Tobacco and Firearms. The agent met with the defendant and, for the first time, advised him of his constitutional rights. Throughout the process, the defendant was completely cooperative.

At the suppression hearing, the F.B.I. agent testified that he had asked the defendant about possible weapons due to his concern about the safety of himself and the other F.B.I. agents. Nonetheless, he admitted that he had known at the time of his question that the possession of a weapon by a convicted felon was a violation of federal law. The F.B.I. agent also testified that he would not have allowed the defendant to leave the motel room. But the agent stated

that the defendant had never been informed of this intention nor had the defendant ever requested to leave.

The district court concluded, based on the presence of three armed F.B.I. agents, the subjective intention of the agents not to allow the defendant to leave the motel room, and the knowledge of the F.B.I. agents that possession of a weapon by a convicted felon was a violation of the law, that the defendant had been subjected to a custodial interrogation without having been advised of his constitutional rights. Accordingly, it granted the defendant's motion to suppress the defendant's statement to the F.B.I. agents and the gun seized as a result of that statement. We disagree with the district court's conclusion.

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." In this case, it is undisputed that the federal officers obtained several incriminatory statements from the defendant without advising him of his constitutional rights. Therefore, the crucial issue is whether the statements of the defendant were obtained pursuant to a "custodial interrogation."

The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra*, at 444, 86 S.Ct. at 1612. In applying this definition to specific facts, the Supreme Court has held that a custodial interrogation occurred when an internal revenue agent questioned an individual in a prison where he was serving a state sentence, *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), and when a police officer questioned an individual in his bedroom following his arrest, *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). But the Supreme Court has declined to find a custodial interrogation with respect to the interrogation by an internal revenue agent of an individual in his own home, *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), and the interrogation of an individual at a police station when the individual was informed that he was not under arrest, *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

From these cases, it is clear that the question of custodial interrogation is not dependent on any single factor but must be determined on the basis of the totality of the circumstances surrounding the interrogation.

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."

*Oregon v. Mathiason, supra* at 495, 97 S.Ct. at 714.

■ The point at which preliminary questioning by a police officer becomes a custodial interrogation is not a clear one. We believe that, as a general matter, *Miranda* warnings are not required when the questioning by police is brief and limited in purpose. But even brief questioning may necessitate *Miranda* warnings if the questioning takes place in a police dominated or compelling atmosphere. *United States v. Hickman*, 523 F.2d 323 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976). Each case must turn on its own particular facts.

In *United States v. Harris*, 528 F.2d 914 (4th Cir. 1975), *cert. denied*, 423 U.S. 1075, 96 S.Ct. 860, 47 L.Ed.2d 86 (1976), a reliable informant called the Bureau of Alcohol, Tobacco and Firearms and stated that an individual standing in an alley was carrying a shotgun-pistol. Two agents went to the alley and saw an individual matching the description given by the informant. A portion of the pistol was protruding from the individual's pocket. Rather than arresting Harris at that time as one agent conceded that he would have done, the agents approached him and asked him whether he was carrying a gun. Harris admitted that he did have a gun and started to draw it out. The agents seized the gun and, at that point, advised Harris of his constitutional rights. The district court suppressed both the statement and the weapon. The Court of Appeals for the Fourth Circuit reversed on the basis that there had not been a custodial interrogation. The court held that under the particular facts of that case, "there was no 'potentiality for compulsion' or other consideration to bring *Miranda* into play." *United States v. Harris, supra* at 915.

 We find the facts of *Harris* comparable to the facts of this case. The defendant invited the three F.B.I. agents into his motel room after the agents had made known their identity and the nature of their investigation. The questions asked of the defendant were brief and limited in purpose to establishing his identity and to insuring the safety of the F.B.I. agents. The defendant was not under arrest at the time of the questioning. While the agents might have prevented the defendant from leaving the room, they never informed the defendant of that intention. *See United States v. Smith*, 441 F.2d 539 (9th Cir. 1971) (unexpressed intent of police officer to detain the defendant not sufficient to establish a custodial interrogation). The overall atmosphere of the questioning in this case was clearly one of cooperation and not one of compulsion.

Under these circumstances, we do not believe that *Miranda* warnings were required. Accordingly, the introduction of the defendant's statement and the weapon seized as a result of that statement is not improper.

We need not and therefore do not consider the government's alternative contention, which is that since the F.B.I. agents were entitled to pat the defendant down for weapons, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and since asking him whether he had a weapon was even less intrusive than patting him down, this seizure could be supported on the basis of *Terry.*

The district court's order of suppression is therefore

Reversed.