Richard McCARTY, Petitioner-Appellant,

v.

Captain HERDMAN,
Respondent-Appellee.

No. 82–3216.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1983.

Decided Sept. 6, 1983.

Certiorari Granted Jan. 9, 1984.
See 104 S.Ct. 697.

R. Williams Meeks (argued), Columbus, Ohio, for petitioner-appellant.

James Kirk (argued), Franklin County Prosecutor, Columbus, Ohio, for respondent-appellee.

Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal presents the sole issue of whether law enforcement officers must give "Miranda warnings" to individuals in custody for misdemeanor traffic offenses. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Richard McCarty appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of operating a motor vehicle while under the influence of alcohol and/or drugs in violation of Ohio Revised Code § 4511.19, a first degree misdemeanor. Evidence supporting his conviction included incriminating statements which he tried unsuccessfully to suppress. He was sentenced to ninety days in jail, eighty of which were suspended. The Franklin County, Ohio Court of Appeals affirmed the conviction and the Ohio Supreme Court refused to accept jurisdiction in this matter. The district court below denied habeas relief because in its judgment, one arrested for a misdemeanor traffic offense is not constitutionally entitled to Miranda warnings. See, e.g., Clay v. Riddle, 542 F.2d 456 (4th Cir. 1976); and Ohio v. Pyle, 19 Ohio St.2d 64, 249 N.E.2d 826 (1969). McCarty appeals from that decision.

The state trooper's arrest report and the parties' stipulations comprised all the facts before the trial judge. Ohio State Trooper Williams observed McCarty's car weaving in and out of its lane while travelling south on Interstate 270 on the evening of March 31, 1980. Trooper Williams stopped the car and asked McCarty to get out. He noticed that McCarty needed support to keep from falling as he exited the vehicle. "At this time Trooper Williams concluded that the defendant would be charged with a traffic offense and, therefore, his freedom to leave the scene terminated."[1] (Joint stipulation.)

McCarty had difficulty performing the field sobriety balancing test. While still at the scene of the arrest, he told Trooper Williams that he had recently consumed two beers and several joints of marijuana. McCarty's speech was very slurred and Trooper Williams had difficulty understanding him.

Trooper Williams placed McCarty under formal arrest and took him to the county

---

1. While the parties so stipulate, we do not feel bound by the subjective standard implied in the stipulation. See United States v. Harris, 611 F.2d 170, 172 (6th Cir.1979).

In Lowe v. United States, 407 F.2d 1391 (9th Cir.1969), the court stated:

It follows that the time when the officer's intent to arrest is formed has no bearing on the question of whether or not there exists "in custody" questioning. Whether a person is in custody should not be determined by what the officer or the person being questioned thinks; there should be an objective standard. Although the officer may have an intent to make an arrest, either formed prior to, or during the questioning, this is not a factor in determining whether there is present "in-custody" questioning. It is the officer's statements and acts, the surrounding circumstances, gauged by a "reasonable man" test, which are determinative.

Id. at 1397; accord, United States v. Booth, 669 F.2d 1231, 1235 (9th Cir.1981). See also Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

jail for an intoxilyzer test. The test showed no alcohol in McCarty's system. At the jail, McCarty answered Trooper Williams' questions for the State Highway Patrol Alcohol Influence Report. McCarty responded that he was "barely" under the influence of alcohol. At Trooper Williams' request, McCarty wrote on the report that the marijuana he had smoked had not been treated with "PCP" or "angel dust." At no time, either before or after McCarty was taken into custody, did Trooper Williams advise him of his constitutional rights.

Before the trial judge, McCarty moved to exclude his statements to Trooper Williams. His motion was denied. He pleaded *nolo contendere* and was found guilty of driving while intoxicated.

McCarty argued consistently, at both state and federal levels [2] that *Miranda v. Arizona* requires law enforcement officers to advise all persons taken into custody of their constitutional rights to counsel and to remain silent. Because he was not so advised when arrested for drunken driving, he maintains that the statements he made while in police custody cannot support his conviction. We agree.

In *Miranda,* the Supreme Court held that an individual in police custody may not be interrogated until and unless he is first advised that he has the right to remain silent; that anything he says may be used against him; that he had the right to an attorney; and that an attorney will be appointed for him if he cannot retain one. These warnings are an "absolute prerequisite to interrogation," said the court, 384 U.S. at 467, 86 S.Ct. 1624, and without the warnings, the fruits of a custodial interrogation are inadmissible at trial.

> To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed

to protect the privilege.... But unless and until such warnings are demonstrated ..., no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 478–479, 86 S.Ct. at 1630 (footnote omitted).

*Miranda,* then, creates procedural safeguards to secure the fifth amendment privilege against self-incrimination. Although felony offenses were specifically in issue in *Miranda* and its companion cases, the language of the opinion does not limit the safeguards to individuals suspected of felonies. Similarly, yet more importantly, the language of the fifth amendment does not limit the privilege against self-incrimination to those charged with felonies. It has never been suggested that a defendant charged with a misdemeanor could be compelled to testify against himself. To so argue would be both illogical and inconsistent. "[T]here can be no doubt that the Fifth Amendment privilege ... serves to protect persons *in all settings* in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U.S. at 467, 86 S.Ct. at 1624 (emphasis added). We hold that *Miranda* warnings must be given to *all* individuals prior to custodial interrogation, whether the offense investigated be a felony or a misdemeanor traffic offense.

Our reasoning here follows *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), which concerned the scope of the sixth amendment right to counsel. There the defendant faced potential incarceration for committing a misdemeanor. The Court held, "[a]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012. The Court relied heavily on *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1964), for the proposition that all defendants, including the indigent, are enti-

2. Habeas relief after a guilty plea is permissible. *See Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (Justices

White, Powell, Burger, and Rehnquist dissenting.)

364

tled to counsel. Although *Gideon* involved a felony offense, the Court noted neither *Gideon* nor the sixth amendment right to counsel was limited to "serious" offenses. 407 U.S. at 30, 92 S.Ct. at 2009. We follow this same reasoning to extend the right to counsel to individuals charged with misdemeanors.

We recognize that the Fourth Circuit in *Clay v. Riddle,* 541 F.2d 456 (4th Cir.1976), declined to require *Miranda* warnings for misdemeanor traffic offenses. That court's decision seemed to turn on two factors. First, the court noted its awareness of language in *Miranda* that the *Miranda* decision was "not intended to hamper" the traditional investigative functions of the police. *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629, *quoted in Clay,* 541 F.2d at 457. Second, the court emphasized that "the unlawful incident [in *Clay*] was a commonplace event—a traffic offense . . . ." *Id.* Neither of these factors convinces us that *Miranda* does not apply to traffic misdemeanors.

First, the traditional investigative police functions will not be hampered by requiring *Miranda* warnings prior to custodial interrogations in misdemeanor traffic offenses. "On-the-scene questioning," preserved by the *Miranda* Court, is likewise preserved today. To the extent that *Miranda* and its progeny permit non-custodial interrogations when a felony is investigated, our decision permits the same when a misdemeanor traffic offense is investigated. It is only when an individual "has been taken into custody or otherwise deprived of his freedom of action in any significant way," *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, that warnings must be given before questioning begins. We do not hold that the mere stopping of a motor vehicle triggers *Miranda.* Because the police gather information in misdemeanor traffic offenses primarily through on-the-scene questioning, their freedom to investigate remains essentially unhampered.

Second, we attach no significance to the fact that traffic offenses are "commonplace" events. The privilege against self-incrimination is an enduring right, undiminished by the number of people who enjoy it or the frequency of its exercise. The mere fact that police officers may frequently have to advise individuals of their constitutional rights does not justify limiting these important procedural safeguards to felony cases. Furthermore, although traffic offenses may be commonplace, *custodial interrogations* stemming from misdemeanor traffic offenses are *rare.* For these reasons, we decline to adopt the Fourth Circuit's reasoning in *Clay* that *Miranda* warnings do not apply to the present situation because the offense is commonplace.

We believe that the facts of the present case require that Trooper Williams should have advised McCarty of his constitutional rights. At the point that Trooper Williams took McCarty to the police station, his "freedom of action [was] curtailed in [a] significant way." The failure to advise McCarty of his constitutional rights rendered at least some of his statements inadmissible. *Miranda.*

Because the petitioner was convicted on inadmissible evidence, we vacate his conviction. Accordingly, we remand the case to the district court for the issuance of a writ of habeas corpus, giving the State of Ohio ninety days in which to retry McCarty.

WELLFORD, Circuit Judge, dissenting.

I agree with much of the majority opinion in this case. As I read the opinion, the majority finds that McCarty was not in custody until he was formally placed under arrest. During the original confrontation and investigation at the scene, McCarty was not significantly deprived of freedom of action, despite the stipulation that the officer knew that McCarty would be arrested as soon as he got out of his automobile. This comports with the language in *Miranda v. Arizona,* 384 U.S. 436, 477–78, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966), stating:

Our decision is not intended to hamper the traditional function of police officers in investigating crime . . . . General on-the-scene questioning as to facts sur-

rounding a crime ... is not affected by our holding.... In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

Consequently, I agree that McCarty's statements made prior to formal arrest were made in a noncustodial situation and were therefore admissible. *See U.S. v. LeQuire,* 424 F.2d 341, 343–44 (5th Cir.1970).

Even if a suspected traffic offender were deemed to be "in custody" or significantly "deprived of his freedom" by the investigating officer *at the scene* of an investigation for a misdemeanor offense, (and McCarty was here charged with a first degree misdemeanor under Ohio law), I would hold that any admission or confession made under such circumstances to be admissible without a *Miranda* warning. *See Clay v. Riddle,* 541 F.2d 456 (4th Cir.1976).

I agree with the majority, however, that the later questioning after formal arrest at the police station was subject to *Miranda, supra,* since this was clearly a custodial situation. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), holds that a defendant charged with a misdemeanor, even a traffic offense, must have counsel if he is to be sentenced to jail, but the right to counsel would not apply as a constitutional requirement if an offender were deprived of his automobile license or fined in a misdemeanor proceeding. Application of this rationale to admission of evidence without a *Miranda* warning in this "first degree misdemeanor" situation compels the conclusion that *Miranda* warnings are only required in a *clearly* custodial situation, as where a formal arrest is made. McCarty's confessions at the police station, therefore, if material, since they came after arrest and formal charges, would be inadmissible.

The later confessions, however, merely reiterate what McCarty had already admitted at the scene to the investigating officer. Failure to suppress what was essentially repetitious confession evidence, which should not have been admitted on the basis of failure to give *Miranda* warnings at the

jail, was harmless error under the circumstances. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I would therefore affirm the district court's denial of habeas corpus relief.