**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Darryl "Monk" REYNOLDS (84–5697),
Sam Gilbert (84–5698),
Defendants-Appellants.**

Nos. 84–5697, 84–5698.

United States Court of Appeals,
Sixth Circuit.

May 7, 1985.

B. Robert Stivers, Stivers & Stivers, London, Ky., Charles R. Coy, Coy, Coy & Gilbert, James T. Gilbert (argued), Richmond, Ky., for defendants-appellants.

Louis DeFalaise, U.S. Atty., Robert Rawlins, Jane Graham (argued), Lexington, Ky., for plaintiff-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and EDWARDS, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Sam Gilbert and Darryl Reynolds appeal their jury convictions for two counts of mail fraud and one count of conspiracy to commit mail fraud. They raise four issues: the failure to suppress a videotaped conversation on fifth and sixth amendment grounds; the failure to exclude the tape as unduly prejudicial under Rule 403; the sufficiency of the evidence; and the sufficiency of the indictment. We find no error on the part of the District Court and affirm.

The evidence at trial established that Gilbert had asked a Kentucky State Police informant to arrange for someone to purchase several trucks owned by Gilbert. Gilbert told the informant that he wished to collect the insurance on the trucks. The informant then introduced Gilbert to a police officer, who posed as a prospective purchaser, and Gilbert agreed to sell the trucks to the undercover officer. On September 8, 1982 Gilbert and co-defendant Darryl Reynolds delivered two trucks to the officer, who paid Gilbert $10,000 cash. On September 12 Gilbert and Reynolds delivered the remaining trucks to the officer, even though the officer told Gilbert he could not pay him immediately. On September 13 Gilbert reported the trucks stolen to the police, and on September 14 he reported the loss of the trucks to his insurance agent. On September 22 Gilbert and Reynolds met again with the undercover officer and a second undercover officer, in order to receive payment for the trucks delivered September 12. This meeting, at a truck stop, was videotaped by police, who also made an audio recording through a microphone carried by the undercover officer. During this meeting Gilbert discussed the insurance he expected to collect for the trucks as well as the possibility of arranging future sales in conjunction with insurance fraud. The videotape of this meeting was introduced into evidence over defendants' objection. At the close of the meeting Gilbert and Reynolds were arrested by the police, who had warrants for their arrest.

1. *Suppression of the Videotaped Conversation*

Gilbert's September 22 meeting with the undercover police officer, whom Gilbert believed to be a private purchaser of his trucks, was videotaped by Kentucky State Police in an unmarked van at the truck stop where the meeting was held. The undercover officer was wired with a transmitter. When the parties met, Gilbert suggested that they go into his car to talk. In the car Gilbert made a number of incriminating statements. At the end of the conversation the undercover officer executed the arrest warrants for Gilbert and Reynolds, which he had in his possession. The recordings of this meeting were introduced into evidence at trial.

A. Fifth Amendment

Defendants contend that the recordings were obtained in violation of their fifth amendment right against compelled self-incrimination, and therefore should have been excluded under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendants argue that they were in custody when the statements were made because the officers had warrants for their arrest and would not have permitted them to leave the area.

This argument would initially appear to be foreclosed by the Supreme Court's decision in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), which was decided the Term following *Miranda.* In *Hoffa* the defendant had made incriminating statements to a paid government informer. The Supreme Court dismissed the defendant's argument that admitting the statements violated the fifth amendment by reasoning that "a necessary element of compulsory self-incrimination is some kind of compulsion," 385 U.S. at 304, 87 S.Ct. at 414, and that *Miranda* had relied on the compulsion inherent in certain custodial interrogations. The Court then found that the defendant's statements to the informant had been wholly voluntary. That a voluntary conversation with an undercover police officer is just as voluntary as a conversation with an informant was established in *United States v. Ball,* 428 F.2d 26, 31–32 (6th Cir.), *cert. dismissed,* 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970), where this Court, relying on *Hoffa,* held that statements made to an undercover officer were not compelled within the meaning of the fifth amendment. Similarly, in this case there is no evidence that defendants were compelled to make any statements before their arrest.

Defendants argue, however, that the fact that the police had a warrant for their arrest and would not have permitted them to leave the scene means that there was in fact a custodial situation although the warrants had not yet been executed. Defendants rely particularly on the decisions in *United States v. Cortez,* 425 F.2d 453 (6th Cir.), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970), and *Windsor v. United States,* 389 F.2d 530 (5th Cir.1968). In *Cortez* this Court approved a district court's statement that:

> Whether or not the defendant was in custody from the time law enforcement officers entered the motel room is determined not merely from the defendant's subjective feeling as to whether he was under arrest, but also from the nature of police intentions and actions in light of the surroundings.

425 F.2d at 457. In *Windsor* the court relied on a treatise which stated:

> The prime inquiry is into the existence of probable cause. If indeed the police officer had probable cause to arrest, his protestations that the person detained was "free to go" must be ignored. It must be presumed that a police officer will do his duty; if he has probable cause, he will arrest. The existence of probable cause establishes "custody." Any other rule would permit the frustration of Miranda's commands.

389 F.2d at 534 n. 5, *quoting* Sobel, *The New Confession Standards* 61 (1966). Defendants therefore argue that the existence of a warrant and the intent of the police to detain them require a finding that they were in custody when the statements were made.

This theory is inconsistent with the decisions in *McCarty v. Herdman,* 716 F.2d 361 (6th Cir.1983), *aff'd sub nom. Berkemer v. McCarty,* — U.S. —, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In *McCarty* the defendant made incriminating statements to an officer after being stopped for a traffic misdemeanor. Some statements were made before defendant was placed under arrest, and some were made after the arrest. The parties stipulated that all statements were made after the officer had subjectively determined that the defendant would be charged and would not be allowed to leave. This Court, however, held it was not bound by this stipulation when determining whether the defendant had been in custody for *Miranda* purposes. Quoting *Lowe v. United States,* 407 F.2d 1391, 1397 (9th Cir.1969), the Court held that an objective "reasonable man" test controlled, rather than the officer's intent to make an arrest. 716 F.2d at 362 n. 1. Affirming, the Supreme Court held that the statements made prior to the arrest (but after the officer decided that the defendant was not free to leave) were in fact non-custodial and therefore admissible. The Supreme Court held: "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular

time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 104 S.Ct. at 3152 (footnote omitted). *See also United States v. Harris,* 611 F.2d 170 (6th Cir.1979) (no custodial interrogation where agents had probable cause and intent to detain, but had not communicated that intent to defendant). To the extent that language in *Cortez* and *Windsor* suggests that probable cause and unexpressed intent to detain establish a custodial situation, those decisions are inconsistent with the Supreme Court's decision in *McCarty.*

■ In the present case it is clear that defendants were unaware of the existence of warrants for their arrest or that their freedom of movement would be curtailed by police. Since the warrants were unknown to defendants, their existence could not have affected how the defendants understood their position, which is the only relevant consideration under *Berkemer.* Reasonable men in the defendants' position would have felt free to leave at any time. Defendants were therefore not in custody and were under no compulsion when the incriminating statements were made. Introduction of the recordings did not violate the fifth amendment.

**B. Sixth Amendment**

■ Defendants also contend that the statements were obtained in violation of their sixth amendment right to counsel under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). This issue is controlled by the Supreme Court's decision in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), where the Court held that the right to counsel did not attach to a preindictment lineup. The four-Justice plurality opinion in *Kirby* noted:

> In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158] it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the

time that adversary judicial proceedings have been initiated against him.

406 U.S. at 688, 92 S.Ct. at 1881. Justice Powell concurred in the result. Defendants argue that the issuance of warrants for their arrest constituted initiation of "adversary judicial proceedings" against them. This argument is foreclosed, however, by the fact that in *Kirby* the defendant was actually under arrest and in custody at the time of the lineup. The mere issuance of an unexecuted warrant indicating probable cause to arrest is certainly no more an adversary judicial proceeding than is actual arrest and custody. The analysis of *Kirby* was reaffirmed by the Supreme Court in *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where the Court held that sixth amendment rights had attached at the time of a preliminary hearing or arraignment. Neither these nor any other judicial proceedings had taken place at the time of the statements challenged here. The statements were not elicited in violation of the sixth amendment.

2. *Admissibility of the Videotaped Conversation Under Rule 403*

During the videotaped conversation Gilbert admitted that the trucks were his, that he had initiated contact with the government informant in order to find a buyer, and that his motive for the deal was to recoup some of his insurance payments. Gilbert also stated that he liked to do insurance deals and discussed the possibility of selling more trucks and construction equipment in the future. Over defendants' objection, the District Court held the conversation admissible under Fed.R.Evid. 404(b). The government requested that the jury be instructed that it could only consider the conversation as evidence of motive and intent. The District Court expressed its willingness to give such an instruction, but declined to give one when the defendants objected. Defendants do not contend on appeal that the conversation was inadmissible under Rule 404(b), but argue instead that the references to possible future crimi-

nal activity were so prejudicial as to require that the evidence be excluded under Rule 403.

■ The admission or exclusion of evidence under Rule 403 is within the sound discretion of the trial court. *United States v. Brady,* 595 F.2d 359 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). The references to possible future criminal activity were intertwined with and part of the evidence of motive, scheme, and intent. This evidence was not introduced solely to show criminal disposition. *Cf. United States v. Aims Back,* 588 F.2d 1283 (9th Cir.1979). A limiting instruction was offered but refused. The District Court did not abuse its discretion in admitting the conversation.

### 3. *Sufficiency of the Evidence*

■ Defendants contend that there was no evidence of a mailing sufficient to establish the mailing element of a mail fraud violation. A mail fraud violation requires a mailing caused by the defendant in furtherance of the fraudulent scheme. *United States v. Talbott,* 590 F.2d 192 (6th Cir.1978). A mailing is "caused" by the defendant if it is a reasonably foreseeable result of the defendant's actions. *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Gilbert's insurance agent testified that Gilbert had called her to report the loss of his trucks. The agent further testified as follows:

> Q. Had you advised Mr. Gilbert that anything would have to be prepared or anything like this?
> A. Yes, sir, he knew ... Sam knew that each time you have a claim, you have to come in and sign a proof of loss or a claim form so I could report it to the company.

This testimony is sufficient to establish that it was foreseeable to Gilbert that his report would result in claim forms being mailed to the insurance companies. That Gilbert did not sign the forms himself (his wife signed his name to the forms at the agent's office) does not establish that he did not cause the forms to be mailed. Fur-thermore, the mailing of the claim forms was clearly in furtherance of the scheme. The mailings were a necessary predicate to the receipt by Gilbert of the insurance proceeds, which was the object of the scheme. In *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), relied on by defendants, the defendant achieved the object of his scheme before any mailing occurred. The evidence at trial was sufficient to support the convictions.

### 4. *Sufficiency of the Indictment*

■ Finally, defendants challenge the sufficiency of the indictment. They claim that the mail fraud counts of the indictment do not allege that defendants knowingly caused matter to be delivered by mail. However, the indictment does specifically allege that defendants knowingly entered into a scheme to defraud, that as a part of the scheme defendants would knowingly cause matter to be mailed, and that defendants did cause matter to be mailed. The allegations that the scheme included a plan to knowingly cause matter to be mailed were sufficient to give defendants notice of the charges against which they would have to defend.

■ Defendants also claim that the conspiracy count was defective because it did not allege as an overt act that defendants knowingly caused matter to be mailed in furtherance of the scheme. Defendants point out that two mailings were described as overt acts, but that it was not alleged as an overt act that these mailings were knowingly caused by defendants. However:

> It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy....

*Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927). Mailing is an element of the crime of mail fraud but not an element of the crime of conspiracy. The elements of conspiracy

were clearly alleged and the nature of the agreement adequately set forth. *See United States v. Reed,* 721 F.2d 1059 (6th Cir. 1983) (upholding indictment containing much less specific conspiracy allegation). The challenge to the indictment is without merit.

Accordingly, the judgment of the District Court is affirmed.