875 F.2d 868
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Karl C. SHUMAKER, Defendant-Appellant.
 No. 88-6174.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1989.
 
 Before RALPH B. GUY and RYAN, Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Karl C. Shumaker, was convicted of mailing a threatening communication in violation of U.S.C. Sec. 876, and obstruction of justice in violation of 18 U.S.C. Sec. 1512. On appeal, Shumaker raises a number of issues, all of which we find to be without merit. Accordingly, we affirm.
 
 I.
 
 2
 In 1986, the Internal Revenue Service began an investigation of a tax protestor group headed by Franklin Sanders. Sanders devised a scheme to hide assets from the IRS by opening three special bank accounts. The members of the protestor group would then deposit all their funds in these accounts and Sanders would write a check on one of the accounts whenever a member needed money or wanted a bill paid. The members of the protestor group would also claim sufficient dependents to eliminate or minimize to the greatest degree possible any withholding deductions from their paychecks. Under this scheme it was very difficult to trace back monies expended on behalf of the individual protestors. Shumaker was one of the protestors who participated in the bank deposit scheme.
 
 
 3
 In the course of the IRS investigation, the bank records of Sanders' accounts were subpoenaed. Sanders became aware of this and wrote to the IRS agent in charge of the investigation telling the agent that he knew about the subpoenas. Sanders also published a copy of the letter he sent to the IRS agent in a publication he put out entitled "Moneychanger." This publication was sent to all members of the protestor group and Shumaker received a copy. Angered by the potential discovery of his hidden assets, Shumaker sent the IRS agent a threatening letter.[1] When the IRS agent, Cade, received the letter, he sent it out for analysis and a thumbprint was found on the back of the stamp. Cade also stayed on the alert for any handwriting that appeared to match that contained in the threatening letter, and eventually ran across documents written by Shumaker that appeared to contain similar handwriting. Shumaker was summoned before a grand jury and compelled to provide handwriting exemplars. Handwriting experts then concluded that Shumaker had written the threatening letter. Shumaker also provided a set of fingerprints to the grand jury, and a laboratory analysis revealed that the thumbprint matched the one found on the back of the stamp. Primarily, on the basis of this evidence, Shumaker was indicted.
 
 II.
 
 4
 At the time of his indictment, Shumaker, along with other members of the tax protestor group, were under investigation for possible tax law violations. Shumaker moved for a continuance until such time as the tax investigation could be completed, urging that the two cases could then be consolidated. The denial of this motion is the basis of Shumaker's first claim of error.
 
 
 5
 We find no merit to this claim. Shumaker was, in effect, asking that his trial be indefinitely postponed because at some time in the future he might be indicted on a related charge. That this is too speculative a basis on which to grant a continuance is best illustrated by the fact that, to this date, Shumaker has still not been indicted on other charges. In addition, the Speedy Trial Act, 18 U.S.C. Sec. 3161(c)(1), requires that trials commence within seventy days of indictment unless there is excludable time. There is no reference in the Act to the possibility of another indictment being the basis for excludable time.
 
 
 6
 Defendant also claims error as to the admission of certain evidence pursuant to Federal Rule of Evidence 404(b). In general, this evidence related to defendant's activities as a member of the tax protestor group, and was offered to show the motive that defendant would have had for writing a threatening letter to the IRS agent. We find no problem with the admission of this evidence, particularly in light of the fact that the jury was instructed not to concern itself with any tax offenses that the defendant may have committed, and was to consider the tax evidence only as it bore on the issue of motive or intent.
 
 
 7
 In a related objection, defendant argues that evidence of certain bank deposits he made in the Sanders' account after the threatening letter was sent should not have been admitted into evidence. Subsequent events are admissible to prove motive or intent when they are part of one overall scheme and are "intertwined with and part of the evidence of motive, scheme, and intent." United States v. Reynolds, 762 F.2d 489, 494 (6th Cir.1985). The deposits in question were made before indictment, and were relevant to show the nature of the involvement of the defendant in the Sanders' scheme as further evidence of his motive for sending the threatening letter.
 
 
 8
 As to all of the rule 404(b) evidence, it also should be noted that since Shumaker offered lack of capacity due to alcoholism as a defense, the "related acts" evidence was pertinent to show the defendant's rational acts in participating in a sophisticated tax avoidance scheme, making it more probable that the act of sending the threatening letter was the act of a person with full capacity.
 
 
 9
 Defendant's next claim concerns the admission into evidence of a portion of one of the tax protestor's newsletters. The government's only purpose in offering this particular issue was to show that the copy offered into evidence had a pre-printed mailing label with Shumaker's name and address on it. This was relevant to show that the defendant was on Sanders' mailing list and received the newsletter. That defendant received the newsletter was relevant because the government later introduced another copy of the newsletter which contained the copy of the letter that Sanders sent to agent Cade. Thus, the jury could conclude that the defendant had knowledge from reading the newsletter of the name of the specific agent who was investigating this tax avoidance scheme. Defendant does not claim that this evidence was not relevant but, rather, that he should have been allowed to present to the jury the substantive content of the newsletter that was introduced. Although defendant does not specifically allude to Federal Rule of Evidence 106, this is the evidentiary rule which would be implicated.[2] Rule 106 does not require that every time a portion of a writing is introduced that the rest of the writing must come in. The rest of the writing becomes relevant only when it is necessary to put it before the factfinder in the interest of fairness. What defendant clearly wished to accomplish was to put before the jury the content of articles dealing with the philosophy of the tax protestors, which had nothing to do with the limited purpose for which the government had the newsletter admitted. The trial judge properly exercised her discretion in ruling against the defendant's request.
 
 III.
 
 10
 Prior to trial, the defendant filed a notice of intent to utilize the defense of insanity or diminished capacity. Fed.R.Crim.P. 12.2. Defendant alleged he was suffering from "Post Traumatic Stress Disorder." After medical examination failed to support this theory, the defendant indicated he intended to rely on a defense of diminished capacity predicated upon alcoholism. Title 18 U.S.C.A. Sec. 17 (West Supp.1989) provides:
 
 
 11
 It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
 
 
 12
 The legislative history of section 17 makes it clear that Congress intended to eliminate the defense of "diminished capacity:"
 
 
 13
 The Committee also included language in section 20 explicitly providing that mental disease or defect other than that which renders the defendant unable to appreciate the nature and quality or wrongfulness of his act does not constitute a defense. This is intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant has a "diminished responsibility" or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony.
 
 
 14
 S.Rep. No. 98-225, 98th Cong., 2d Sess., reprinted in 1984 U.S.CODE CONG. & ADMIN.NEWS 3411.
 
 
 15
 The legislative history also specifically dealt with the matter of voluntary alcohol abuse as a defense:
 
 
 16
 The Committee also intends that, as has been held under present case law interpretation, the voluntary use of alcohol or drugs, even if they render the defendant unable to appreciate the nature and quality of his acts, does not constitute insanity or any other species of legally valid affirmative defense.
 
 
 17
 Id.
 
 
 18
 Notwithstanding the current status of "diminished capacity" as a defense, the defendant was allowed to introduce expert testimony as to chronic alcoholism, and the fact that due to drinking he had no memory of mailing the letter. Nonetheless, the defendant claims that he should have been allowed to introduce even more testimony relating to his drinking problem. Specifically, the defendant argues that he should have been allowed to review his whole career with the Navy where his drinking problems allegedly started. In our view, the trial judge properly ruled out this testimony. The only relevance of defendant's drinking related to whether he had the specific intent to commit the offense with which he was charged.[3] Thus, the only relevant time period would have involved the time when the offense was committed. United States v. Echeverry, 759 F.2d 1451, 1454 (9th Cir.1985). If anything, the trial judge gave the defendant more leeway than would have been required. Through his expert, the defendant was able to introduce statements about his conduct at or near the time of writing the threatening letter which he would not otherwise have gotten into evidence, since he elected not to take the stand and testify.
 
 IV.
 
 19
 Defendants last claim of error involves an alleged erroneous jury instruction. Shumaker objects to the definition given to the jury of the word "delivery" in connection with the charge given with regard to the offense of mailing a threatening communication. Relative to the elements of the offense, the jury was charged:
 
 
 20
 Three elements are required to be proved in order to establish the offense that is charged in count one of the indictment; first, that the defendant caused to be delivered a communication by the Postal Service according to the directions thereon; second, that the communication was addressed to another person and contained a threat to injure the person of the addressee or someone else; and third, that the defendant did the above acts knowingly.
 
 
 21
 As I have told you before, the burden is always on the government to prove beyond a reasonable doubt every essential element of the offense charged. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
 
 
 22
 With respect to the offense charged in count one, it is not necessary that the defendant be shown to have personally delivered the communication or personally to have done the other acts constituting the essential elements of the offense, as long as he is shown to have knowingly caused the communication to be delivered by the Postal Service and that each of the elements of the offense was carried out as well.
 
 
 23
 (Tr.Vol. III, pp. 435-436.)
 
 
 24
 It was necessary in this case for the court to elaborate on the element of "delivery" since the defendant claimed that as a result of drinking he had no memory of ever mailing the letter. It is clear from the statute that there is no requirement that the defendant personally deposit the letter in the mail. The statute provides in relevant part:
 
 
 25
 Whoever knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service or knowingly causes to be delivered by the Postal Service according to the direction thereon, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person, and containing any demand or request for ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
 
 
 26
 18 U.S.C. Sec. 876.
 
 
 27
 The court's charge on delivery was consistent with the statutory requirement of "knowingly causes to be delivered." Defendant's argument that when the court used the word "personally," it suggested that the defendant need only have written the letter, even if he did nothing further to ensure its delivery, is not persuasive. There is no doubt from the evidence in this case that the defendant wrote the letter, put it in an envelope, put a stamp on the envelope, and that the letter was delivered to agent Cade. There was also testimony from defendant's wife that if anyone in the family wanted to mail a letter, they would place it on the kitchen counter and it would be placed in the mail box for the postal service to pick up. From this evidence it was permissible for the jury to conclude that Shumaker either mailed or caused to be mailed the threatening letter.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The letter read as follows:
 Dear Mr. Cade:
 Leave Franklin Sanders and his family alone.
 Any further reports of you or your comrades visiting or calling either Mr. Sanders or his wife will be a signal to use physical violence upon you.
 We are not guided by Mr. Sanders [sic] Golden Rule convictions. We do understand them as good people; you we understand are bad people; draw your own conclusions.
 (App. 38).
 
 
 [2]
 Fed.R.Evid. 106 reads as follows:
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
 
 
 [3]
 Lack of specific intent would have been a defense to the obstruction of justice charge, but the mailing of a threatening communication is a general intent crime